## Staunton

J. C. Boward, Trading as J. C. Boward Truck Line v. John Lynch Leftwich, Personal Representative of George Leftwich, Deceased.

September 14, 1955.

Record No. 4365.

Present, Eggleston, Buchanan, Miller, Smith and Whittle, JJ.

The opinion states the case.

*Moncure & Cabell* and *C. M. Elder,* for the plaintiff in error.
*E. S. Solomon, Hale Collins* and *John T. Delaney,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court,

The issue in this case is whether the evidence is sufficient to support the verdict against appellant, based on a charge of willful or wanton negligence on the part of the driver of his truck in causing the death of George Leftwich, appellee's decedent.

The action was brought against Boward, trading as J. C. Boward Truck line, and Cecil R. Mitchell. Mitchell, Boward's employee, was driving Boward's tractor-trailer truck loaded at Covington with oil in drums for delivery in Pittsburgh. The truck weighed 18,000 pounds and its cargo 23,750 pounds. Mitchell had had twelve to fifteen years' experience as a truck driver but had not previously driven this truck, which the evidence showed was in good condition. Mitchell had been specifically instructed by his employer not to pick up passengers. He had been working for Boward one or two months.

The trip from Covington to Pittsburgh was being made over Highway 220 via Hot Springs and Monterey. The accident happened about four-thirty in the afternoon of April 9, 1951, not far north of Hot Springs. Mitchell took the wrong road at Hot Springs but had turned around and was back at Route 220 when he came upon Leftwich at the side of the road. He stopped and asked Leftwich if that was the right road to Monterey, No. 220, that he wanted to follow No. 220. Leftwich replied, "Yes, this is the right road; if you're going to Monterey, I'll ride over and show you the way." Mitchell answered that he was not allowed to haul any passengers, but added, "Just for the accommodation, come on, I'll haul you over there." Leftwich got in, they drove up the road a short distance and pulled over into a side lane. While there one Bradley came along and Mitchell asked him the way to Monterey. Bradley told him and at Mitchell's invitation also got into the truck and rode up the road but got out before the accident occurred. He testified that there was nothing about Mitchell's driving or his condition to make him afraid.

There was no surviving eye-witness to the accident other than Mitchell, who testified that he was driving at 35 to 40 miles an hour; that he wasn't used to the truck and was having a little trouble about shifting gears. "I was trying to get it out of fourth gear and running along, I just taken my eyes off the road and looked down at the gearshift and the right wheel dropped off the hard surface of the road and hit this loose, wet mud and it just pulled over—it pulled me over to the right of the road and I couldn't pull

it back. I tried to pull it back in the road and couldn't. The further it went, the deeper it bogged down in there." "* * the truck just bogged down and turned over on its side." Leftwich, who was then riding with his head out the window, was killed.

Mitchell was driving north. There was a curve in the road about 75 yards south of the accident. A short distance before reaching the curve the truck passed a man who testified that he heard the motor racing and as the truck passed, the driver was "trying to hit the gears, and he couldn't get it in gear;" that there were two men in the truck, one lying with his head over the door and the driver "was looking down at the floor, trying to get it in gear," but had not got it in gear when he went around the turn. He further testified that the driver seemed to be driving all right, "was on the right side of the road, but he just couldn't get the truck in gear."

When the truck was in the lane where Bradley was picked up a State trooper came by and asked Mitchell if he was having any trouble or was lost. Mitchell replied that he had been lost but was straightened out now and was all right. This trooper came to the scene of the accident about an hour after it happened. He testified that he found the tracks of the truck where it left the road and went off the shoulder into the ditch and turned over; that the tracks measured 123 feet, 9 inches; that the road was level and straight from the point where the truck left the hard surface to where it turned over; that from the edge of the hard surface to the ditch the shoulder of the road was seven feet wide, consisting of five feet of firm sod on which the truck wheels had gone down only an inch or two; that the remaining two feet to the ditch were muddy and marshy and it had been raining. Mitchell told him he was having trouble with the gears of the truck; that he couldn't get it in gear and lost control of it.

Mitchell, the driver, was arrested, indicted for involuntary manslaughter, entered a plea of guilty and was sentenced to twelve months in jail, six of which were suspended. He did not appear at the trial of the instant case but his previously taken deposition was read in evidence.

The jury returned a verdict against both Mitchell and Boward, his employer, on which judgment was entered. There was no appeal by Mitchell and we have no jurisdiction with respect to the judgment against him. Boward has appealed and made seven

assignments of error, the one controlling the disposition of the case being that the verdict was contrary to the law and the evidence and without evidence to support it.

■At the instance of the plaintiff the court instructed the jury that both defendants owed Leftwich the duty not to willfully and wantonly injure him, and that if Leftwich's death was caused by the willful and wanton negligence of Mitchell, the verdict should be against the defendants. The jury were also instructed, without objection from the plaintiff, that the burden was on the plaintiff to prove that Mitchell was guilty of willful or wanton negligence. These instructions, therefore, became the law of the case and the evidence must be measured by the rule so stated. They were given in accordance with the court's ruling that Leftwich, riding in violation of the orders given by Boward to Mitchell not to pick up passengers, was a trespasser who could recover only for willful or wanton injury. Cf. *Morris* v. *Dame's Ex'r*, 161 Va. 545, 572 ff., 171 S. E. 662, 672-3; *Stone* v. *Rudolph*, 127 W. Va. 335, 32 S. E. (2d) 742.

While the plaintiff assigned cross-error to the ruling that his decedent was a trespasser, as well as to the giving of an instruction that Mitchell's plea of guilty to the charge of manslaughter was not admissible in evidence against Boward, these cross-assignments were waived at the hearing. Cf. *Yellow Cab Co.* v. *Eden*, 178 Va. 325, 336, 16 S. E. (2d) 625, 628; *Blue Ridge Light &c. Co.* v. *Price*, 108 Va. 652, 655, 62 S. E. 938, 939.

■ The evidence in this case, as a matter of law, falls materially short of proving willful or wanton negligence on the part of Mitchell.

Without objection the court instructed the jury, in the language of an instruction given in *Morris* v. *Dame's Ex'r*, *supra*, "that to constitute wanton negligence it is necessary that there be shown an entire absence of care of the safety of others which exhibits indifference to consequences."

Wanton negligence is "reckless indifference to the consequences of an act or omission, where the party acting or failing to act is conscious of his conduct and, without any actual intent to injure, is aware, from his knowledge of existing circumstances and conditions, that his conduct will inevitably or probably result in injury to another;" whereas willful negligence implies an act intentionally

done, or omitted, in disregard of another's rights. Black's Law Dict., 3 ed., 1233-4.

"* * Willfulness or wantonness imports premeditation or knowledge and consciousness that injury is likely to result from the act done or from the omission to act. * * Wanton misconduct is positive in nature, while mere negligence is materially negative. * *." 38 Am. Jur., Negligence, § 48, pp. 692-3.

Willful or wanton negligence involves a greater degree of negligence than gross negligence, particularly in the sense that in the former an actual or constructive consciousness of the danger involved is an essential ingredient of the act or omission; and an action for willful or wanton injury is not supported by evidence which establishes only gross negligence. *Stone* v. *Rudolph, supra.*

"Negligence conveys the idea of heedlessness, inattention, inadvertence; willfulness and wantonness convey the idea of purpose or design, actual or constructive. * *." *Thomas* v. *Snow,* 162 Va. 654, 660, 174 S. E. 837, 839.

Gross negligence " 'falls short of being such reckless disregard of probable consequences as is equivalent to a willful and intentional wrong. Ordinary and gross negligence differ in degree of inattention, while both differ in kind from willful and intentional conduct which is, or ought to be, known to have a tendency to injure.' " *Thornhill* v. *Thornhill,* 172 Va. 553, 563, 2 S. E. (2d) 318, 322; *Chappell* v. *White,* 182 Va. 625, 630, 29 S. E. (2d) 858, 860; *Alspaugh* v. *Diggs,* 195 Va. 1, 5, 77 S. E. (2d) 362, 364; *Altman* v. *Aronson,* 231 Mass. 588, 121 N. E. 505, 4 A. L. R. 1185, 1187.

In the present case all that the evidence proves is that Mitchell was driving properly, at a lawful speed and on his side of the road; that just before he reached the curve in the road he was looking down at the floor, trying to get the truck in gear. He evidently did not keep his eyes on the floor of the truck because he turned the curve without mishap. After he had rounded the curve and entered upon a straight stretch of road, where there was no other traffic, and as he was trying to get his motor out of fourth gear, he took his eyes from the road, looked down at the gearshift and his right wheel dropped off the hard surface onto the shoulder. When that occurred his truck pulled to the right, he was unable to pull it back, it continued to the right and turned over into the ditch.

It may be conceded that his looking away from the road and down at the gearshift while driving the heavy vehicle with its

heavy load at the speed stated was an act of inattention or of heedlessness amounting to negligence, whether simple negligence or gross negligence could be debated. See *Bashor* v. *Bashor*, 103 Colo. 232, 85 P. (2d) 732, 120 A. L. R. 1507 and Anno. at 1513 ff. It is entirely clear, however, that his act was not done with the consciousness, actual or constructive, that it would inevitably or probably result in injury to his passenger so as to constitute willful or wanton negligence necessary to sustain the verdict and judgment appealed from.

The judgment against Boward is accordingly reversed and final judgment in his favor will be entered here.

*Reversed and final judgment.*