## Richmond

MARILYN SUTHERLAND GRIFFIN,
ADMINISTRATRIX, ETC.

v.

GARLAND SHIVELY

Record No. 811588.

April 27, 1984.

Present: All the Justices.

French H. Conway; W. Carlton White, for appellant.
Frank O. Meade (Meade, Tate & Daniel, P.C., on brief), for appellee.

STEPHENSON, J., delivered the opinion of the Court.

In this appeal, the question presented by the sole assignment of error is whether the trial court erred when it struck the plaintiff's evidence on the ground that her decedent was guilty of contributory negligence as a matter of law.

The plaintiff, Marilyn Sutherland Griffin, Administratrix of the Estate of Albert Clinton Sutherland, sued Garland Shively to recover damages for Sutherland's wrongful death. She alleged that Shively negligently shot and killed Sutherland. Shively denied liability on the ground that Sutherland himself was guilty of negligence which proximately contributed to his death.

A jury was impaneled for the trial, but at the conclusion of the plaintiff's case, the trial court found Sutherland guilty of contributory negligence as a matter of law, struck the plaintiff's evidence, and entered summary judgment for Shively. The plaintiff appeals.

Shively was the operator of the "Country Diner" restaurant. During the morning of April 10, 1980, Shively went to the well house behind the diner to turn on the water. In a few minutes he returned, pale and fearful. He explained to a fellow employee that, "I just saw some snakes in [the well house]."

Sutherland and Wayne Rogers entered the diner a short time later. Sutherland, who was aware of Shively's fear of snakes, teasingly threatened to "put snakes on" the defendant. Shively appeared frightened by the threat and said, "Don't go out there and get them [sic] snakes."

Shively asked Rogers to chase the snakes from the well house and turn on the water. Rogers, Sutherland, and another man went to the well house, but because Rogers saw three snakes there, the men returned to the restaurant without turning on the water. Sutherland and Rogers continued to tease the defendant, telling him that they were going to get a snake from the well house and "put it on him." The defendant repeatedly asked them not to do it because he was "scared of [snakes]."

It was obvious to Rogers that, as a result of the teasing, the defendant was extremely frightened. He observed that Shively was pale and shaking, and he heard him say, "I am liable to shoot you." Consequently, Rogers "quit fooling with [Shively]."

During the afternoon, while Shively was talking on the telephone with his back to the door, Sutherland walked into the restaurant and threw a belt around the defendant's neck. Shively, believing it was a snake, dropped the telephone, "fell over [a] jukebox and turned white." Sutherland laughed about the inci-

dent. Later that day, while Sutherland and Shively were seated with a group of people in a restaurant booth, someone threw a belt on the table. The defendant was so frightened that, in making his escape, he climbed over one of the men in the booth and nearly upset the table.

A short time later, Sutherland said to a companion, in Shively's presence, "Let's go get the real snake." Upon hearing this, Shively warned that someone might get shot if they tried to "put a snake on" him. He begged Sutherland not to carry through with his threat, saying: "If you do, you won't walk back in the door." Sutherland knew Shively had a gun.

Nevertheless, Sutherland left the restaurant, headed in the direction of the well house. Shively tried to leave through the front door, but was unable to open it. He exclaimed: "They have locked me in here." (The door could be locked from the outside.)

Hazel Quinn, another restaurant employee, related that she had been locked in the restaurant twice in the past. She also testified that Shively appeared frightened, and everyone in the restaurant knew he was deathly afraid of snakes.

Shively stood behind a counter, holding a gun which he aimed at the door. He saw the men outside and thought he understood one to be saying, "We got a big one." Moments later, Sutherland flung the door open and threw a long, black object into the restaurant toward Shively. It was a belt.

Quinn saw the object but could not tell what it was because "it went so fast." Shively, believing the object was a snake, shot at it. The shot struck and killed Sutherland. Shively testified that he and Sutherland were good friends and he didn't intend to shoot Sutherland.

The plaintiff advances two arguments. First, she contends that the trial court erred in finding Sutherland contributorily negligent as a matter of law. Secondly, she asserts that even if Sutherland was contributorily negligent, recovery is not barred because Shively was guilty of willful and wanton negligence, to which contributory negligence is not a defense.

Generally, negligence (whether ordinary, gross, or willful and wanton), contributory negligence, and proximate cause are issues for a jury's resolution. They only become questions of law to be determined by a court, when reasonable minds could not differ. *Meeks v. Hodges*, 226 Va. 106, 109, 306 S.E.2d 879, 881 (1983); *VEPCO v. Winesett*, 225 Va. 459, 464, 303 S.E.2d 868, 872

(1983); *Community Bus Co. v. Windley*, 224 Va. 687, 689, 299 S.E.2d 367, 369 (1983).

■ In the present case, Sutherland knew, or should have known, that Shively was terrified by snakes. Indeed, Shively's extreme fear of snakes caused Sutherland to persist in his teasing.

Despite Shively's obvious fear, Sutherland left the restaurant, ostensibly to secure a "real snake." Moreover, Sutherland knew Shively had a gun with him. Moments later, Sutherland flung the door open and threw the object toward Shively. Believing it was a snake, Shively shot at it and killed Sutherland.

Viewing, as we must, the evidence in the light most favorable to the plaintiff, we are of opinion that the trial court correctly ruled that Sutherland's conduct constituted contributory negligence as a matter of law. We do not believe reasonable minds could differ on the issue. To the contrary, we find that reasonable minds could reach but one conclusion, *viz.*, that Sutherland knew, or should have known, that his conduct likely would cause him bodily harm.

■ This brings us to the plaintiff's second argument: that Shively was guilty of willful and wanton negligence, to which contributory negligence is not a defense. The law recognizes three degrees of negligence, (1) ordinary or simple, (2) gross, and (3) willful, wanton, and reckless. We have defined ordinary or simple negligence as the failure to use "that degree of care which an ordinarily prudent person would exercise under the same or similar circumstances to avoid injury to another." *Perlin v. Chappell*, 198 Va. 861, 864, 96 S.E.2d 805, 808 (1957) (quoting *Montgomery Ward and Co. v. Young*, 195 Va. 671, 673, 79 S.E.2d 858, 859 (1954)).

■ Gross negligence is "that degree of negligence which shows indifference to others as constitutes an utter disregard of prudence amounting to a complete neglect of the safety of [another]. It must be such a degree of negligence as would shock fair minded men although something less than willful recklessness." *Ferguson v. Ferguson*, 212 Va. 86, 92, 181 S.E.2d 648, 653 (1971) (emphasis omitted); *Haymore v. Brizendine*, 210 Va. 578, 581, 172 S.E.2d 774, 777 (1970).

■ Willful and wanton negligence is acting consciously in disregard of another person's rights or acting with reckless indifference to the consequences, with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another. *Friedman v. Jordan*, 166

Va. 65, 68, 184 S.E. 186, 187 (1936). "Willful or wanton negligence involves a greater degree of negligence than gross negligence, particularly in the sense that in the former an actual or constructive consciousness of the danger involved is an essential ingredient of the act or omission . . . ." *Boward v. Leftwich*, 197 Va. 227, 231, 89 S.E.2d 32, 35 (1955).

■ The plaintiff correctly states the general rule that a defendant who is guilty of willful and wanton negligence cannot rely upon contributory negligence as a defense. *Thomas v. Snow*, 162 Va. 654, 660-61, 174 S.E. 837, 840 (1934); Annot., 92 A.L.R. 1367 (1934); Annot., 138 A.L.R. 1127 (1942); 57 Am. Jur.2d, *Negligence* §305 (1983). However, as Shively asserts, the rule is subject to the exception that when the plaintiff's contributory negligence, itself, amounts to willful and wanton conduct, recovery is barred. *Blanchard v. Bass*, 153 Me. 354, 139 A.2d 359 (1958); *Schneiderman v. Interstate Transit Lines, Inc.*, 394 Ill. 569, 69 N.E.2d 293 (1946); Restatement (Second) of Torts § 503 (1965).

In other words, while contributory negligence, in the sense of failing to exercise ordinary care for one's safety, is not a defense to a defendant's willful and wanton negligence, a plaintiff's wanton and reckless disregard for his own safety bars recovery even against a defendant whose conduct also amounts to willful and wanton negligence. The reason for this exception is that, when two persons are equally at fault in producing the injury, neither's negligence is the proximate cause of the injury. Consequently, the law leaves both parties where it finds them. *Hinkle v. Minneapolis, A. & C. R. Ry. Co.*, 162 Minn. 112, 202 N.W. 340 (1925); *Spillers v. Griffin,* 109 S.C. 78, 95 S.E. 133 (1918).

■ We conclude that the evidence in the present case presents a jury issue whether Shively was guilty of willful and wanton negligence. The undisputed evidence is that Shively consciously discharged a deadly weapon in close proximity to a number of people in a relatively small room. We believe a jury reasonably could find that this conduct, in light of the surrounding circumstances, established willful and wanton negligence. On the other hand, a jury reasonably could conclude that Shively's conduct did not rise to that degree of culpability.

■ Moreover, while we hold that the trial court correctly ruled that Sutherland's conduct amounted to contributory negligence as a matter of law (*i.e.*, a failure to exercise ordinary care for his own safety), nevertheless, we believe it is within the province of

the jury to determine whether it amounted to willful and wanton negligence. If it did, recovery is barred notwithstanding that Shively, also, was guilty of willful and wanton negligence.

Therefore, on remand the following possibilities exist: first, the jury could find both Sutherland and Shively guilty of willful and wanton negligence, in which case, there can be no recovery; or, secondly, the jury could find that Shively's conduct was willful and wanton negligence but Sutherland's negligence was not willful and wanton, in which event Sutherland is entitled to recover; or, finally, the jury could conclude that Shively's conduct did not rise to that degree of culpability amounting to willful and wanton negligence, in which case, Sutherland's contributory negligence bars recovery.

Therefore, we will reverse the judgment of the trial court and remand the case for a new trial so that, under proper instructions consistent with the views expressed herein, a jury may determine the degrees of both Sutherland's and Shively's negligence and whether the defense of contributory negligence is available to Shively.

*Reversed and remanded.*

COMPTON, J., dissenting.

In my opinion, Sutherland's action, whether classified as simple, gross, or wilful negligence was as egregious as Shively's conduct, as a matter of law, and should bar the plaintiff's recovery. Thus, I would affirm the judgment of the trial court.