948 F.2d 1282
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Charlotte E. OVERMAN, Plaintiff-Appellant,
v.
OCCOQUAN, WOODBRIDGE, LORTON VOLUNTEER FIRE DEPARTMENT,
INCORPORATED; Dumfries Triangle Rescue Squad; Dale City
Volunteer Fire Department; Gainesville District Volunteer
Fire Department; Nokesville Volunteer Fire Department;
Coles District Volunteer Fire Department & Rescue Squad;
Lake Jackson District Volunteer Fire Department; Yorkshire
Volunteer Fire Department; Stonewall Jackson Volunteer Fire
Department & Rescue Squad; Evergreen Volunteer Fire
Department & Rescue Squad; Buckhall Volunteer Fire
Department, Incorporated; William H. Spicer, Jr.; Donald
R. Mercer, Jr.; George Buchanan; Peter Paulin, Jr.; Brian
W. Hickerson; Richard W. Byrd; Arthur A. Proviano; David
A. Scott; Selby Jacobs; Dallas Slemp; Warren Otis Martin;
Lisa K. Loven; David Batson; Russell Evans, Defendants-Appellees.
 No. 90-2475.
 United States Court of Appeals, Fourth Circuit.
 Argued Nov. 1, 1991.
Decided Dec. 6, 1991.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Claude M. Hilton, District Judge. (CA-90-42-A)
 Argued: Charles Bren Roberts, Roberts & Weiss, Woodbridge, Va., for appellant; Sharon E. Pandak, County Attorney, Prince William, Va.; Julia Bougie Judkins, Lewis, Trichilo & Bancroft, P.C., Fairfax, Va., for appellees.
 On Brief: Mark S. Weiss, Sydney E. Rab, Roberts & Weiss, Woodbridge, Va., for appellant; M. Alice Rowan, Assistant County Attorney, Prince William, Va., Bruce D. White, Brault, Palmer, Grove & Zimmerman, Ralph N. Boccarosse, Jr., Siciliano, Ellis, Dyer & Boccarosse, Fairfax, Va., for appellees.
 E.D.Va.
 AFFIRMED.
 Before MURNAGHAN and NIEMEYER, Circuit Judges, and JOSEPH H. YOUNG, Senior United States District Judge for the District of Maryland, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Charlotte E. Overman, personal representative and sole beneficiary of her husband, James E. Overman, appeals the judgment of the district court denying relief under the Virginia "wrongful death" statute based on her allegation that appellees were grossly negligent in failing to respond timely to her call for emergency assistance. Va.Code Ann. § 8.01-50 (Michie 1984). Because defendants are entitled to sovereign immunity and, because plaintiff provided no evidence of gross negligence, we affirm.
 
 I. FACTS
 
 2
 In January, 1988, the Overmans were advised by their doctor that, due to poor cardiovascular fitness, James Overman had a high risk of significant coronary artery disease. On the morning of February 23, 1988, Mr. Overman fell in the bathroom of his home and briefly lost consciousness. Concerned about her husband's physical condition and medical history, plaintiff dialed "911" at 5:55 a.m. and reported her husband's symptoms to the operator, David Batson. Batson asked several questions to determine the nature and severity of Mr. Overman's condition and told plaintiff he would "get somebody out there." He then asked, "Does he want anybody out there?" Mrs. Overman responded that she would "take him in" and would call back if she needed further assistance. Batson then cleared the call from the "911" computer terminal.
 
 
 3
 A second call to "911" was made by the plaintiff at 6:05 a.m. to request an ambulance. This time, a different operator answered the call and, after hearing a description of the symptoms, said that she would send someone out. She classified the call as "ALS sickness," "ALS" denoting "advanced life support."* The call was forwarded by computer to the Prince William County ("County") dispatcher.
 
 
 4
 When the dispatcher received the call, no ALS ambulances were available anywhere in the County. Following the County's "911" procedures, the dispatcher called the first rescue station listed by the computer according to geographic proximity to the emergency site. Again, following standard operating procedure, when the dispatcher did not receive a response to her first call after three minutes, the dispatcher called the next station on the list. In all, five stations were called, each progressively further from the Overmans' home, before a response was received from the Dumfries-Triangle Station 3 which responded at 6:24 a.m. and dispatched an ambulance.
 
 
 5
 At 6:34 a.m., Ms. Overman made a third call to "911" and told a third operator that her husband had stopped breathing. At no time was plaintiff told that no ALS equipment or personnel were available to assist her. At 6:37 a.m., approximately thirty-two minutes after the first call requesting an ambulance, assistance arrived at the Overman home. When the ambulance crew asked for ALS assistance, they were told no ALS units were available. Mr. Overman had no pulse and no blood pressure when the Dumfries BLS crew arrived. ALS treatment was finally administered when Overman arrived at 6:59 a.m. at the Potomac Hospital. He was pronounced dead at 7:21 a.m. from a heart attack.
 
 
 6
 At the time of the events giving rise to this action, Prince William County provided emergency fire and rescue services to its residents through a combination of paid personnel and thirteen volunteer fire and rescue companies. These volunteer-owned and operated rescue stations provided service primarily from 5:00 p.m. to 7:00 a.m. on weekdays and twenty-four hour service on holidays and weekends. The Prince William County Fire and Rescue Chiefs' Association, a voluntary group, had no enforcement mechanism for the standard operating procedures established by Association members and County personnel. Compliance by volunteer departments was voluntary and there were no penalty provisions for non-compliance.
 
 
 7
 The County also provided all call taking and dispatching services for both career and volunteer companies. The County dispatcher could be reached by dialing "911" and career personnel answered calls for emergency assistance twenty-four hours a day and dispatched the calls to career or volunteer personnel. Depending on the seriousness of the call, the operator would designate the call as ALS or BLS. If assistance was requested by the caller, the operator would designate it as "sickness" or "injury" on the computer and enter specific comments and then send the information by computer to the dispatcher who would dispatch fire and rescue equipment pursuant to County procedures and policies.
 
 
 8
 Prior to February, 1988, there had been reports that some volunteer company rescue crews routinely "abandoned" their stations before the paid crews came on duty at 7:00 a.m., to enable them to get to their regular places of employment on time. A July, 1987 report of the County's emergency medical directors noted a "significant gap" in ALS coverage between the hours of 5:00 a.m. and 7:00 a.m.
 
 
 9
 After February, 1988, the County Director of Fire and Rescue services implemented a staggered scheduling system for County ambulances to provide an ALS vehicle and medic unit between 5:00 and 7:00 a.m., thereby closing the gap which had previously existed in the system.
 
 
 10
 Plaintiff filed this complaint pursuant to Virginia's "wrongful death" statute, Va.Code Ann. § 8.01-50 (Michie 1984). Named as defendants were twelve private rescue companies which are licensed by the Commonwealth of Virginia to provide emergency medical services ("EMS") in the County; the chiefs of those companies; the Director of Fire and Rescue Services for the County; a training officer for the County Fire and Rescue Service; and certain "911" operators and dispatchers employed by the County. After completing discovery, defendants moved for summary judgment pursuant to Fed.R.Civ.P. 56. The trial judge granted summary judgment based on the doctrine of sovereign immunity as to some of the defendants, and the application of the Virginia "good Samaritan" law as to others, Va.Code Ann. § 8.01-225 (Michie Supp.1991), and then proceeded to hold that plaintiff had failed to show any evidence of gross negligence.
 
 II. SOVEREIGN IMMUNITY
 
 11
 The doctrine of sovereign immunity protects certain persons and entities from civil suits for simple negligence in the performance of their non-ministerial duties. It does not shield such persons from acts of gross negligence. See James v. Jane, 267 S.E.2d 108 (Va.1980).
 
 
 12
 The factors to be considered to determine whether an employee is entitled to immunity are:
 
 
 13
 1. the nature of the function performed by the employee;
 
 
 14
 2. the extent of the state's interest and involvement in the function;
 
 
 15
 3. the degree of control and direction exercised by the state over the employee; and
 
 
 16
 4. whether the act complained of involved the use of judgment and discretion.
 
 
 17
 Messina v. Burden, 321 S.E.2d 657, 663 (Va.1984) (citing James v. Jane, 267 S.E.2d at 113).
 
 
 18
 The first requirement of the James test was reviewed in Edwards v. City of Portsmouth, 375 S.E.2d 747 (Va.1989), where the Supreme Court of Virginia considered whether, in providing ambulance services, "the governmental entity is exercising the powers and duties of government conferred by law for the general benefit and well-being of its citizens." Id. at 750. It concluded that the provision of such services by the city was a governmental function.
 
 
 19
 The extent of the state's interest and involvement in providing emergency rescue and medical care for its citizens is demonstrated by the Virginia code sections authorizing counties to create rescue zones and to contract for such services. Va.Code Ann. §§ 27-23.1, 32.1156(B) (Michie 1985). It is also clear that the "act complained of" involved the use of judgment. The companies were planning for unforeseeable emergencies and events, and the operators were required to make split-second judgment calls regarding the classification of callers and whom to dispatch to a particular site.
 
 
 20
 Turning to the question of the degree of control and direction exercised by the State or County over the companies, we hold that under the facts under consideration, the control was sufficient to entitle the companies to the benefit of the state's sovereign immunity. As noted, supra, counties are authorized to provide emergency medical services and to contract with any agency to do so and to create rescue zones and contract for the services of individual corporations. The counties are also authorized to prescribe rules and regulations for the operation of such rescue zones.
 
 
 21
 The County and State exercised an important degree of control over the companies in February, 1988. First, the State certified the individual companies; second, the County approved each of the companies for the purpose of providing fire and/or rescue services within the County pursuant to Virginia Code; third, the County entered into written agreements with each company recognizing the establishment of various training, operation, and communications programs with the companies; fourth, the County had entered into mutual aid agreements with the volunteers and other jurisdictions to assist neighboring counties in the event of larger emergencies, and finally, the companies received the majority of operating funds, as well as training and equipment, from the County.
 
 
 22
 In view of these considerations, the companies, the chiefs of the companies, the Director of Fire and Rescue Services, and other County employees are protected by the doctrine of sovereign immunity.
 
 III. GROSS NEGLIGENCE
 
 23
 Sovereign immunity does not protect the defendants from liability for acts that are grossly negligent or ministerial. Here, the facts, when viewed in a light most favorable to plaintiff, may suggest simple negligence. However, defendants' conduct was not a heedless, palpable violation of rights showing an utter disregard of prudence, and, thus, did not constitute gross negligence. Frazier v. City of Norfolk, 362 S.E.2d 688 (Va.1987); Griffin v. Shively, 315 S.E.2d 210, 213 (Va.1984). Therefore, the defendants did not lose their sovereign immunity.
 
 
 24
 AFFIRMED.
 
 
 
 *
 Once a call is designated ALS, rescue vehicles with advanced life support equipment are dispatched to treat critically-ill patients and heart attack victims. ALS vehicles were required to carry a Cardiac Technician ("CT")
 Calls designated "BLS" or "Basic Life Support" are responded to with vehicles which do not contain such equipment. BLS vehicles are normally staffed by persons certified only to provide CPR and basic forms of resuscitation. Such persons are routinely Emergency Medical Technicians ("EMT").
 Because CT's require substantially more training than EMT's, many volunteer companies have difficulty qualifying members as CT's.