COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges O'Brien, Ortiz and Friedman
Argued at Fredericksburg, Virginia


ALAN W. COLIE, SOMETIMES KNOWN AS
 ALAN WALTER COLIE

                                                     MEMORANDUM OPINION* BY
v.        Record No. 0874-24-4                     JUDGE DANIEL E. ORTIZ
                                                        SEPTEMBER 30, 2025

COMMONWEALTH OF VIRGINIA


               FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
                          Matthew P. Snow, Judge

          Megan Shapiro (Daniel H. Goldman; The Law Office of Daniel
          Goldman, on brief), for appellant.

          Anna M. Hughes, Assistant Attorney General (Jason S. Miyares,
          Attorney General, on brief), for appellee.


     This matter began when an internet prank went horribly wrong and Alan Walter Colie

shot Tanner Cook, a YouTube prankster.  Subsequently, after a bevy of charges were lodged

against Colie, a jury convicted him of only unlawful discharge of a firearm in an occupied

building, in violation of Code § 18.2-279.  Colie claimed that the shooting was in self-defense,

testifying that he was "fearful that [his] life was in danger."  On appeal, Colie argues that the

evidence was insufficient to convict him of unlawful discharge.  He also assigns error to the

circuit court's rulings on four jury instructions.  Because the evidence was sufficient and the jury

instructions were proper, we find no reversible error and affirm.

---

        * This opinion is not designated for publication.  See Code § 17.1-413(A).

BACKGROUND[1]

## I. The Shooting

Tanner Cook was a YouTube creator whose videos focused on pranking the public. On the morning of April 2, 2023, Cook went to the Dulles Town Center Mall with another content creator, Francesco Lonigro, and two cameramen to film new content for their YouTube channels. The prank for that day was to walk up to mallgoers and play a recording from Cook's phone that said, "Hey dipshit, quit thinking about my twinkle." Cook had already attempted the prank on at least one other person when he saw Colie in the mall's food court and decided to prank him.

Cook and Lonigro walked up to Colie; Cook held his phone up to him, playing the recording while the cameramen filmed the interaction from approximately 15 feet away. Colie said something to Cook before beginning to walk away. Cook walked toward Colie and continued to play the recording. During this interaction, Colie told Cook to "stop," backed up, pushed Cook's phone away with his hand, and walked towards the food court exit. Cook continued walking toward Colie and played the recording a fourth or fifth time. Colie then drew his weapon and shot Cook. The bullet pierced Cook's upper left abdomen, requiring treatment at the hospital for injuries to his bowel and liver. At trial, video recordings of the shooting were entered into evidence and showed that the interaction between Colie and Cook lasted approximately 20 seconds.

Cook testified that, while he did not inform Colie ahead of time that it was a prank and that he was unarmed, he had no intention of hurting Colie and confirmed that neither he nor his

---

[1] "On appeal, we recite the facts 'in the "light most favorable" to the Commonwealth, the prevailing party in the trial court.'" *Camann v. Commonwealth*, 79 Va. App. 427, 431 (2024) (en banc) (quoting *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)). "Doing so requires that we 'discard' the defendant's evidence when it conflicts with the Commonwealth's evidence, 'regard as true all the credible evidence favorable to the Commonwealth,' and read 'all fair inferences' in the Commonwealth's favor." *Id.* (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).

companions were armed during the interaction. Cook also said he only had his phone in his hand during the prank and had nothing in his other hand. Cook testified that he did not stop the prank because Colie did not "seem to show emotion" and that he "couldn't tell if [Colie] was scared or angry." Cook further testified that, while he was initially two feet away from Colie and held the phone about six inches from Colie's face when the prank began, they were "[a] lot further" apart when Colie shot him. The video recordings corroborated the initial distances described by Cook but, because of an obstruction, do not show the distance between Cook and Colie at the time of the shooting.

Wael Thabet was at the mall at the time of the shooting with his family. Thabet testified that he heard "a loud noise" and that he went to check on a friend who worked in the food court about five minutes later. When he arrived at the food court, he saw a gun on the floor and Colie standing nearby. Thabet told Colie to sit down; Colie complied. Deputy First Class Brian Leppert with the Loudoun County Sheriff's Office arrived at the food court shortly thereafter and saw Colie on the ground "next to" the pistol.

Colie testified in his defense at trial. He told the jury that, on the day of the shooting, he was at the Dulles Town Center Mall picking up a DoorDash delivery. Colie was carrying a concealed gun holstered in his pocket. He testified that he felt it was necessary to carry a gun for his protection because of stories that he had heard about DoorDash drivers being "robbed and assaulted." Colie testified that he had taken "a basic pistol course" that taught him the "[b]asics of firearm safety." He further testified that he took a class to get his concealed carry permit.

Colie stated that, when Cook began to prank him, Cook held the phone approximately six inches from his face and that the recorded phrase "sounded like an accusation or a threat" to him. Colie testified that he asked, "[W]hat's that," but neither Cook nor the other man answered. He also stated that Cook appeared "angry, cold and empty." Colie further testified that he felt

- 3 -

"nervous" and "anxious" and backed away. He said, "[N]o," and told them to "stop," but Cook continued playing the recording as he walked towards him. Colie pushed the phone away with his hand. Colie testified that he told Cook to stop again and "turned and tried to walk in a straight line away from him, towards the exit to the food court." But Cook "seemed like he was being more aggressive" because, "instead of keeping his distance, like he initially had when [Colie] pushed the phone away, [Colie] felt like [Cook] sped up the pace to a point where [Colie] felt like [Cook] was lunging towards [him]." He then turned around and told Cook to stop again. Colie testified, "[A]t that point, he was right up next to me again. After I felt like he lunged towards me to get that close again. And he wasn't moving." He determined that Cook "was a threat" and that Cook "was going to try to harm [him] and didn't give [him] a reason to think he wouldn't." Colie "didn't know if [Cook] could be concealing a weapon or getting ready to strike . . . or kick [him], considering how close he was." He was unaware that the interaction was a prank and claimed that he "was very fearful that [his] life was in danger." Colie determined, "for the sake of [his] own safety and protection," that he needed to "fire one shot towards [Cook's] stomach." Colie estimated that he walked "just feet, . . . about 30 feet" in total from the time Cook approached him to the time he shot Cook.

Asked why he chose not to run away, Colie testified that he did not believe he would be able to outrun Cook. He did not engage Cook physically after pushing his arm away because he "was really surprised by the whole situation," did not know if Cook was armed, and did not believe he could win a physical altercation against Cook, who was 6'5" and 240 pounds, and the other man, who was roughly 5'8". Colie also testified that he feared, if he drew his weapon and did not shoot, that Cook would "attempt to get it away from [him]" and that his gun safety and training classes had taught him never to draw a weapon unless you intended to use it.

- 4 -

During cross-examination, Colie conceded that Cook never presented a weapon, never verbally threatened him, and never physically touched him. Colie also conceded that Cook's phone was not six inches from his face for the entire duration of the interaction. Colie denied that he ever saw either of the men smiling and, when presented with screenshot of Lonigro smiling in the video, stated that he did not see that because he was looking at Cook.

## II. Jury Instructions

The circuit court, with the agreement of both parties, gave Instruction 10 on self-defense. It read:

> If you believe that the defendant, Alan Colie, was without fault in provoking or bringing on the fight, and you further believe that: 1. he reasonably feared, under the circumstances as they appeared to him, that he was in imminent danger of bodily harm; and 2. he used no more force, under the circumstances as they appeared to him, than was reasonably necessary to protect himself from the perceived harm, then he acted in self-defense, and you shall find the defendant not guilty.

The defense proposed three additional instructions about self-defense, Defense Instructions 3, 4, and 5. Defense Instruction 4 (given as Instruction 11) was granted; it stated, "The defendant, Alan Colie, asserts he was acting in self-defense when he shot Tanner Cook. If, after hearing all of the evidence, you have a reasonable doubt as to whether or not Mr. Colie acted in self-defense, then you shall find the defendant not guilty."

Defense Instructions 3 and 5, however, were rejected. Defense Instruction 3 stated:

> It is not essential to the right of self-defense that the danger should in fact exist. If it reasonably appeared at the time to the Defendant, Alan Colie, that the danger existed, he has the right to defend against it to the same extent, and under the same rules, as would obtain in case the danger is real. The defendant may always act upon reasonable appearance of danger, and whether the danger is reasonably apparent is always to be determined from the viewpoint of the defendant at the time he acted.

The circuit court rejected the instruction as duplicative of the law given in Instruction 10.

Defense Instruction 5 stated:

> In passing upon the danger, if any, to which the Defendant, Alan Colie, was exposed, you will consider the circumstances as they reasonably appeared to him and draw such conclusions from these circumstances as he could reasonably have drawn, situated as he was at the time. In other words, Alan Colie is entitled to be tried and judged by the facts and circumstances as they reasonably appeared to him and not by any intention that may or may not have existed in the mind of Tanner Cook.

The circuit court rejected Defense Instruction 5 because it was "confusing" and duplicative of Instruction 10.

Additionally, the Commonwealth proposed an instruction on character evidence, which stated, "You may consider the character of the defendant, Alan Colie, when proven by the evidence, whether good or bad, along with the other facts and circumstances in the case in determining his guilt or innocence." The Commonwealth argued that the defense had introduced character evidence through Colie's testimony that he had a practice of not using his firearm unless necessary. The defense objected, arguing that this testimony was not character evidence. The circuit court granted the instruction, given as Instruction 7, because the "door [for the character instruction] was cracked open[.]"

### III. Jury Question and Verdict

During its deliberations, the jury asked, "Regarding Instruction Number 24, does self-defense come into play when determining if the act was done unlawfully? Does self-defense nullify the act being considered unlawful?" Instruction 24 instructed the jury on malicious discharge of a firearm within an occupied building and the lesser-included offense of unlawful discharge of a firearm within an occupied building. The defense argued that the answer to the question was "yes," and the court should answer that self-defense "is an absolute defense to all the charges they have." The Commonwealth argued that the jury's question required legal analysis and that the court should refer them to the instructions already given. The circuit court

- 6 -

answered the question as Instruction 29, telling the jury, "You have been instructed on the law on the issue of self-defense (Instructions #10 and #11). Those instructions of law are not limited to any particular charge currently before you. Therefore, the Court refers you to the instructions of law already given."

The jury subsequently acquitted Colie of aggravated malicious wounding, its lesser-included offenses (malicious wounding, unlawful wounding, and assault and battery), and the use of a firearm in the commission of a felony. The jury also acquitted him of malicious discharge of a firearm. But the jury convicted Colie of unlawful discharge of a firearm.

The circuit court sentenced Colie to time served and six months of post-release supervision. Colie appeals.

## ANALYSIS

On appeal, Colie challenges the circuit court's giving Instructions 29 and 7 and refusing Defense Instructions 3 and 5. Colie also argues that the evidence was insufficient to convict him of unlawful discharge where he acted in self-defense. For the reasons articulated below, we affirm the judgment of the circuit court.

### I. The circuit court did not err by giving Instruction 29.

Colie first asserts that the circuit court's answer to the jury's question, Instruction 29, failed to accurately state the law because the court should not have used the word "charge" to describe the lesser-included offense of unlawful discharge. The word "charge," he argues, confused the jury because the other instructions never directly stated that he was "charge[d]" with unlawful discharge—"charge" was only used to describe malicious discharge of a firearm. Because the jury's question used the word "act," Colie argues that the circuit court's answer "effectively told [the jury]: no; self-defense only applies to charges," i.e., malicious discharge. We disagree.

- 7 -

"A judicial response to a jury question is considered a legal instruction." *Ludwig v. Commonwealth*, 52 Va. App. 1, 11 (2008). We review a circuit court's decision giving or refusing a jury instruction for an abuse of discretion. *Fahringer v. Commonwealth*, 70 Va. App. 208, 211 (2019). "Whether a proffered jury instruction accurately states the law, however, is reviewed de novo." *Holmes v. Commonwealth*, 76 Va. App. 34, 53 (2022). This Court's role "is to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises." *Swisher v. Swisher*, 223 Va. 499, 503 (1982). "[W]hen reviewing jury instructions on appeal, we read the instructions together and consider them as a whole[.]" *Griffin v. Commonwealth*, 78 Va. App. 116, 145 (2023) (quoting *Supervalu, Inc. v. Johnson*, 276 Va. 356, 366 (2008)). "When granted instructions fully and fairly cover a principle of law, a trial court does not abuse its discretion in refusing another instruction relating to the same legal principle." *Hilton v. Commonwealth*, 293 Va. 293, 302 (2017) (quoting *Daniels v. Commonwealth*, 275 Va. 460, 466 (2008)).

Colie argues that Instruction 29 did not accurately reflect the distinction between malicious discharge, with which he was specifically "charge[d]," and its lesser-included offense, unlawful discharge. But Colie misunderstands the relationship between lesser-included and greater offenses. "A lesser included offense must be 'composed entirely of elements that are also elements of the greater offense.'" *Crump v. Commonwealth*, 13 Va. App. 286, 290 (1991) (quoting *Kauffman v. Commonwealth*, 8 Va. App. 400, 409 (1989)). "The lesser offense is therefore always '*charged by implication*' as a part of the 'greater offense' and 'necessarily proven by the proof of the greater offense.'" *Id.* (emphasis added) (quoting *Taylor v. Commonwealth*, 11 Va. App. 649, 652 (1991)). Thus, contrary to Colie's assertion, the circuit court's description of unlawful discharge as a "charge" that was before the jury was an accurate statement of the law.

Colie nonetheless argues that Instruction 29's use of the word "charge" to describe the lesser-included offenses at issue misled the jury about whether self-defense applied to unlawful discharge. But when Instruction 29 is "read . . . together" with the other self-defense instructions, this argument is fruitless. *Griffin*, 78 Va. App. at 145. The circuit court began its answer by properly referring the jury back to Instructions 10 and 11. *See Couture v. Commonwealth*, 51 Va. App. 239, 246 (2008) ("It is entirely proper for the court to refer the jury back to the court's original charge[.]" (quoting *United States v. Barsanti*, 943 F.2d 428, 438 (4th Cir. 1991))). Instruction 10 required the jury, if they found self-defense, to "find the defendant not guilty." Instruction 11 instructed the jury that, if they had a reasonable doubt as to whether the shooting was in self-defense, they must find Colie not guilty. These instructions were unequivocal that self-defense, if found or if there was reasonable doubt that it existed, required the jury to find the defendant not guilty—the instructions did not limit self-defense to only "charge[d]" conduct. Further, defense counsel agreed to both Instruction 10 and Instruction 11, and together those instructions clearly and correctly stated the law of self-defense. *Cf. Gaines v. Commonwealth*, 39 Va. App. 562, 567 (2003) (en banc) ("A trial judge does not abuse his discretion by failing to modify a correct statement of the law on the mere chance that a jury may not follow clearly written instructions."). Thus, although unlawful discharge was not explicitly "charge[d]," because Instructions 10 and 11 were unequivocal in the applicability of self-defense if found, the circuit court did not abuse its discretion by requiring the jury to refer back to those instructions in its answer.[2]

---

[2] Colie also argues that Instruction 29 violated his rights under the Due Process Clause of the United States Constitution because, insofar as the jury was improperly instructed, it denied him the right to assert an affirmative defense. Because we have found that the court properly instructed the jury on self-defense, we also find that Colie's due process rights were not violated.

II. The evidence was sufficient to convict Colie of unlawful discharge.

"The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). In reviewing the sufficiency of the evidence, "[t]he only 'relevant question is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). "Whether an accused proves circumstances sufficient to create a reasonable doubt that he acted in self-defense is a question of fact." *Smith v. Commonwealth*, 17 Va. App. 68, 71 (1993).

For Colie to be convicted of unlawful discharge, the Commonwealth was required to prove that: (1) he discharged a firearm within an occupied building, (2) he did so in a manner as to endanger the live or lives of such person or persons, and (3) he did so unlawfully. Code § 18.2-279. "Unlawfully" means conduct that is at least criminally negligent. *See Bryant v. Commonwealth*, 295 Va. 302, 310 (2018). Criminally negligent conduct requires "a reckless or indifferent disregard for the safety of others." *Coomer v. Commonwealth*, 67 Va. App. 537, 550 (2017) (quoting *Rich v. Commonwealth*, 292 Va. 791, 798 (2016)); *see also Tubman v. Commonwealth*, 3 Va. App. 267, 271 (1986) ( "[Criminal] negligence is acting consciously in disregard of another person's right or acting with reckless indifference to the consequences, with the defendant aware, from his knowledge or existing circumstances and conditions, that his conduct probably would cause injury to another." (quoting *Griffin v. Shively*, 227 Va. 317, 321 (1984))).

"Self-defense is an affirmative defense which the accused must prove by introducing sufficient evidence to raise a reasonable doubt about his guilt." *Meade v. Commonwealth*, 74

Va. App. 796, 806 (2022) (quoting *Hughes v. Commonwealth*, 39 Va. App. 448, 464 (2002)). "To establish a claim of self-defense, a defendant must show that he reasonably feared death or serious bodily harm at the hands of his victim." *Hines v. Commonwealth*, 292 Va. 674, 679 (2016). "Whether the danger is reasonably apparent is judged from the viewpoint of the defendant at the time of the incident." *Id.* "The defendant must also show that he was in imminent danger of harm, that is, a showing of an overt act or other circumstance that affords an immediate threat to safety." *Id.*

As an initial matter, there is no real dispute that the Commonwealth satisfied the first two elements of unlawful discharge; the evidence viewed in the light most favorable to the Commonwealth showed that Colie discharged his firearm, there were other people in the food court, and the gunshot hit Cook, which damaged his bowel and liver. Instead, Colie argues that the evidence was insufficient to prove the unlawfulness element because the "verdict does not reflect the jury's own finding of self-defense"; in other words, he argues that the jury must have found self-defense to acquit him of the other charges and that the guilty verdict on unlawful discharge was therefore inconsistent with that finding. The Commonwealth counters that Colie cannot assume the jury found self-defense based on the record, and, regardless, the jury was permitted to reach inconsistent verdicts. We agree with the Commonwealth.

"The fact that verdicts may, on their face, arguably appear inconsistent does not provide a basis to reverse either conviction on appeal, provided the evidence is sufficient to support [the] verdict." *Pugliese v. Commonwealth*, 16 Va. App. 82, 96 (1993). Inconsistent verdicts "'cannot be upset by speculation or inquiry' into whether they 'may have been the result of compromise, or of a mistake on the part of the jury,'" *Reed v. Commonwealth*, 239 Va. 594, 597 (1990) (quoting *Dunn v. United States*, 284 U.S. 390, 394 (1932)), or into whether the jury decided to use its power of lenity, *United States v. Powell*, 469 U.S. 57, 65 (1984). Here, the evidence,

- 11 -

viewed in the light most favorable to the Commonwealth, was sufficient for a rational jury to find that Colie acted unlawfully in discharging his firearm and did not act in self-defense.

The court correctly instructed the jury that, to find self-defense, Colie was required to show that "he reasonably feared, under the circumstances as they appeared to him, that he was in imminent danger of bodily harm[]" and that "he used no more force, under the circumstances as they appeared to him, than was reasonably necessary to protect himself from the perceived harm[.]" The evidence showed that Cook walked up to Colie holding a phone around six inches away from Colie. But Cook testified that, by the time Colie shot him, he was "[a] lot further" away. The jury could have disbelieved Colie's self-serving testimony that Cook lunged at him and that he was unaware if Cook could have concealed a weapon, and instead credited Cook's testimony that he was not close to Colie when Colie shot him. *See Sanford v. Commonwealth*, 54 Va. App. 357, 364 (2009) ("[T]he fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." (alteration in original) (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998))). Further, the evidence showed that the interaction was only about 20 seconds long, Cook followed Colie only a short distance through the food court, and there were others from whom Colie could have sought help. Colie also admitted that Cook never threatened or touched him. From this, the jury could have rationally concluded that Colie "had [no] reasonable ground to believe . . . that he was in . . . danger" to justify shooting Cook, *Watkins v. Commonwealth*, 83 Va. App. 456, 483 (2025) (quoting *Humphrey v. Commonwealth*, 37 Va. App. 36, 49-50 (2001)), and that he acted with "a reckless or indifferent disregard for the safety of others," *Coomer*, 67 Va. App. at 550. Accordingly, the circuit court was not plainly wrong to find that the evidence was sufficient to support Colie's conviction.

III. The court did not err in refusing Defense Instructions 3 and 5.

We review a circuit court's refusal to give a jury instruction for an abuse of discretion. *Fahringer*, 70 Va. App. at 211. To reiterate, "[o]ur sole responsibility in reviewing [jury instructions] is to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises." *Swisher*, 223 Va. at 503. "When granted instructions fully and fairly cover a principle of law, a trial court does not abuse its discretion in refusing another instruction relating to the same legal principle." *Hilton*, 293 Va. at 302 (quoting *Daniels*, 275 Va. at 466).

Proposed Defense Instruction 3 stated:

> It is not essential to the right of self-defense that the danger should in fact exist. If it reasonably appeared at the time to the Defendant, Alan Colie, that the danger existed, he has the right to defend against it to the same extent, and under the same rules, as would obtain in case the danger is real. The defendant may always act upon reasonable appearance of danger, and whether the danger is reasonably apparent is always to be determined from the viewpoint of the defendant at the time he acted.

The circuit court refused this instruction, reasoning that the relevant law was sufficiently addressed in Instruction 10, discussed at length above. Colie argues that Instruction 10 did not address whether the danger had to be real, so his proposed instruction was not duplicative. We disagree.

To be sure, Defense Instruction 3 was a correct statement of the law. *See McGhee v. Commonwealth*, 219 Va. 560, 562 (1978) ("It is not essential to the right of self-defense that the danger should in fact exist."). But the relevant substance of Defense Instruction 3 was adequately covered by Instruction 10. Instruction 10 provided that, to find that he acted in self-defense, Colie must have "reasonably feared, *under the circumstances as they appeared to him*, that he was in imminent danger of bodily harm." (Emphasis added). In other words, Instruction 10 clearly articulated that the objective reasonableness inquiry is from the perspective of the

- 13 -

defendant. And that inquiry necessarily encompasses the impact of any perceived danger, "real" or not. *See Stoneman v. Commonwealth*, 66 Va. (25 Gratt.) 887, 900 (1874) ("[If there is] reasonable ground for believing there is a design . . . to do some serious bodily harm, and imminent danger of carrying such design into immediate execution[,]. . . the killing will be justifiable, although it should afterwards turn out that appearances were deceptive . . . ."). Thus, the circuit court correctly determined that Defense Instruction 3 was duplicative, and it did not abuse its discretion by refusing to give it. *See Hilton*, 293 Va. at 302.

For the same reason, the circuit court also did not err in refusing Defense Instruction 5. Proposed Defense Instruction 5 stated:

> In passing upon the danger, if any, to which the Defendant, Alan Colie, was exposed, you will consider the circumstances as they reasonably appeared to him and draw such conclusions from these circumstances as he could reasonably have drawn, situated as he was at the time. In other words, Alan Colie is entitled to be tried and judged by the facts and circumstances as they reasonably appeared to him and not by any intention that may or may not have existed in the mind of Tanner Cook.

The circuit court refused the instruction because it was "confusing and repetitive" and "self-defense law [was] sufficiently stated in other instructions." Colie argues that the given instructions on self-defense did not sufficiently instruct the jury on assessing the reasonableness of Colie's fear from his point of view. But, as we have already noted, Instruction 10 expressly required the jury to determine whether Colie "reasonably feared, *under the circumstances as they appeared to him*, that he was in imminent danger of bodily harm." (Emphasis added). Defense Instruction 5 was therefore a verbose restatement of the principle outlined in Instruction 10, and the court did not abuse its discretion by refusing it.[3]

---

[3] We further note that, if the defense believed that the principles repeated in Defense Instructions 3 and 5 required additional emphasis, they were free to do so in closing argument. *See Payne v. Commonwealth*, 65 Va. App. 194, 211 (2015) ("When a trial court rejects a jury instruction, however, it merely limits the manner by which a party may transmit information to

IV. Any error in giving Instruction 7 was harmless.

Colie's last assignment of error is that the circuit court erred by giving Instruction 7 because there was no evidence to support it. Instruction 7 said, "You may consider the character of the defendant, Alan Colie, when proven by the evidence, whether good or bad, along with the other facts and circumstances in the case in determining his guilt or innocence."

Even if a jury instruction "correctly states the law, if it is not applicable to the facts and circumstances of the case, it should not be given." *Hatcher v. Commonwealth*, 218 Va. 811, 813-14 (1978). "[J]ury instructions are proper only if supported by the evidence, and more than a scintilla of evidence is required." *Payne v. Commonwealth*, 292 Va. 855, 869 (2016) (quoting *Lawlor v. Commonwealth*, 285 Va. 187, 228-29 (2013)). "[W]hen considering whether a jury instruction is supported by the evidence we review the facts in the light most favorable to the proponent of the instruction." *Barney v. Commonwealth*, 69 Va. App. 604, 606 n.3 (2019).

An instruction inviting the jury to consider the character of the defendant in determining guilt should only be given if the defendant offers character evidence. *See Robinson v. Commonwealth*, 118 Va. 785, 790 (1916) ("The weight of authority is to the effect that character is not in issue unless put there by the defendant."). As relevant here, on direct examination, Colie testified that he had taken "a basic pistol course" that taught him the "[b]asics of firearm safety." He further testified that he took a class to get his concealed carry permit. Lastly, he testified that his training taught him to never pull his firearm unless he intended to fire it. The Commonwealth argues that this testimony presented evidence of character traits that would tend to prove Colie was a responsible gun owner who would not unlawfully shoot someone, traits that were relevant to the case.

---

the jury. There are many ways to educate a jury, including those, like closing argument, where commenting upon the evidence is the entire point."), *aff'd*, 292 Va. 855 (2016).

We need not determine whether the circuit court erred by giving Instruction 7 because, even assuming that it did, the error was harmless.

When determining whether a court's error in instructing the jury is harmless, we apply the non-constitutional harmless error test. *Graves v. Commonwealth*, 65 Va. App. 702, 711 (2016). "A non-constitutional error is harmless '[w]hen it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached.'" *Id.* at 712 (alteration in original) (quoting *Turman v. Commonwealth*, 276 Va. 558, 567 (2008)). "This Court may uphold a decision on the ground that any error involved is harmless only if it can conclude, without usurping the jury's fact-finding function, 'that the error did not influence the jury[] or had but slight effect.'" *Id.* (alteration in original) (quoting *Clay v. Commonwealth*, 262 Va. 253, 260 (2001)). "To reach this conclusion, the evidence of guilt must be so overwhelming that it renders the error insignificant by comparison such that the error could not have affected the verdict." *Commonwealth v. Kilpatrick*, 301 Va. 214, 217 (2022).

In this case, first, the purported character evidence was introduced by the defense and was properly before the jury, irrespective of whether the character evidence instruction was error. *Cf. Gravely v. Commonwealth*, 13 Va. App. 560, 564 (1992) (holding that the Commonwealth's improper examination of defendant's witness was not harmless error because the jury would not have heard the evidence but for the cross-examination). Since there was no other evidence presented that could be viewed as character evidence, the instruction did not harm Colie.

Second, for the same reasons the evidence was more than sufficient to support Colie's conviction, *see supra*, any error in giving Instruction 7 had, at most, "but slight effect" on the jury. *Graves*, 65 Va. App. at 712. To reiterate, the elements of unlawful discharge are that the

defendant discharged a firearm within an occupied building, he did so in a manner as to endanger the live or lives of such person or persons, and he did so unlawfully. Code § 18.2-279. Here, Colie testified that Cook never said that he would hurt him and that Cook did not threaten him verbally. He also testified that Cook never touched him and that he "initiated physical contact with [Cook] first." Colie did not try to get mall security or the police to help him. The video of the interaction showed that Colie shot Cook only around 20 seconds after the interaction began and that there were other people to whom Colie could have sought help. Further, the evidence showed Colie's gunshot hit Cook in the upper left abdomen and damaged his bowel and liver. The weight of this evidence makes any error by the circuit court in giving Instruction 7 "insignificant by comparison." *Kilpatrick*, 301 Va. at 217. Accordingly, even assuming that the court erred, any error was harmless.

CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*