Present:  All the Justices

THOMAS W. DANA, ET AL.
                                          OPINION BY
v.  Record No. 030450         JUSTICE LAWRENCE L. KOONTZ, JR.
                                       October 31, 2003
313 FREEMASON, A CONDOMINIUM
 ASSOCIATION, INC.


          FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                  John C. Morrison, Jr., Judge


     In this appeal, we consider whether the trial court erred

in piercing the corporate veil of a close corporation to assess

liability for a judgment against the corporation upon its

stockholders.

                            BACKGROUND

     This case originated with a motion for judgment filed in

the Circuit Court of the City of Norfolk (the trial court) on

June 14, 2000, by 313 Freemason, a Condominium Association, Inc.

(the Association) and the owners of four individual units of the

condominium against Freemason Associates, Inc. (Freemason), and

Thomas W. Dana and Conley J. Hall, the corporation's sole

stockholders.  The motion for judgment alleged that the roof,

chimneys, fireplaces, and flues of the condominium building were

defective when the building was sold by Freemason to the

individual unit owners or their grantors.  Asserting theories of

actual fraud, fraudulent misrepresentation, constructive fraud,

false advertising under Code § 59.1-68.3, breach of contract,

and breach of the statutory warranty provided by Code § 55-79.79 of the Condominium Act, the Association and the individual unit owners sought compensatory damages of "no less than $200,000" in addition to punitive damages, costs, and attorney's fees.

By an order dated April 18, 2001, the trial court severed the claims of the Association and the individual unit owners and directed that each action thereafter proceed independently, except for purposes of conducting discovery.[1]  On June 2, 2001, the Association filed an amended motion for judgment asserting as its separate claims only the claim for breach of the statutory warranty provided by Code § 55-79.79 and a new claim for a violation of Code § 55-79.90, relating to the failure of a public offering statement to "disclose fully and accurately the characteristics of the condominium."  The amount of compensatory damages sought was $380,000 along with punitive damages, costs, and attorney's fees.

Subsequently, the trial court limited the issues to be resolved by the impending jury trial on the Association's claims.  The trial court ruled that the Association would not be permitted to assert a claim for the alleged defects in the

_____

[1] Appeals of two of the individual unit owners are also today decided.  Our resolution of those appeals, however, has no direct bearing upon our resolution of this appeal.  See Klaiber v. Freemason Associates, Inc., 266 Va. ___, ___ S.E.2d ___, (2003).

2

chimneys, fireplaces, and flues.  These claims were reserved to the individual unit owners upon the court's conclusion that these structures were not common elements of the condominium. The court further ruled that Dana and Hall could not be held directly liable for a breach of the Condominium Act by Freemason in its corporate capacity because only that corporation was the declarant for the registration of the condominium.  However, the court also ruled that the Association would be permitted to present evidence in support of its assertion that, in the event it obtained a judgment against Freemason, the corporate veil of Freemason should be pierced in order to impose personal liability upon Dana and Hall.

On September 9, 2002, immediately prior to the commencement of the jury trial, the trial court entered an order in accord with its prior rulings.  The court also dismissed the Association's claim for punitive damages.  Accordingly, the trial proceeded only on the issue of Freemason's liability for the alleged defective roof of the condominium.  At the conclusion of that trial, the jury returned a verdict in favor of the Association in the amount of $37,054.75, without designating the count or counts in the motion for judgment upon which the verdict was founded.

After the jury returned its verdict, the Association filed a motion to pierce the corporate veil of Freemason and for an

3

award of attorney's fees under Code § 55-79.53.[2]  After receiving briefs from the parties, the trial court, sitting without the jury, held an evidentiary hearing on November 6, 2002 on this motion.  In an opinion letter dated November 22, 2002, the court first concluded that an award of attorney's fees against Freemason in the amount of $61,213.17 was appropriate under the statute.  The court then concluded that the evidence from the trial and the evidentiary hearing was sufficient to permit piercing the corporate veil of Freemason and to hold Dana and Hall liable for the judgment and award of attorney's fees against Freemason.

For reasons that will become apparent, we need not recount in detail the evidence or other incidents of the trial relevant to all the assignments of error in this case.  For purposes of the resolution of this appeal, our focus is on the post-verdict determination by the trial court to pierce the corporate veil of Freemason.  Accordingly, we will recite only the evidence from the trial and the post-verdict hearing relevant to that determination.

---

[2] During trial, it was argued that because the award of attorney's fees was a matter of statute, the Association should have been required to present evidence on that issue during its case-in-chief.  The trial court ruled that as an award of attorney's fees would not be appropriate in the absence of a finding of liability, the issue would be resolved by the trial court in the event of a verdict in favor of the Association.

During trial, it was shown that in April 1997 Dana acquired the property located at 313 Freemason Street, a lot and an abandoned residential structure that had last been used as an apartment building, with the intent to renovate the building as a four-unit condominium. Dana encumbered the property with a deed of trust securing a $316,880 personal line of credit. Although he had no direct ownership in the property, Hall testified that "Dana handled the financing and [Hall] handled the renovation" of the building by hiring contractors and overseeing their work. Dana and Hall had previously worked together on similar renovation projects and had several other ongoing projects during the time the 313 Freemason building was being renovated.

Hall, indicating that he was the "manager," filed an application for registration of the condominium. The declarant on the application was listed as Freemason Associates, L.L.C. The application stated that Hall owned approximately fifty percent of the declarant. The application further stated that Freemason Associates, L.L.C. had no assets other than the 313 Freemason property.

In February 1998, Hall contacted the roofing contractor who had installed and subsequently made repairs to the roof of the condominium. Hall advised the contractor that the roof continued to leak and requested that it be replaced. The

5

following month, although they did not advise him of the ongoing problem with the roof, Dana and Hall sought the advice of an attorney who advised them that "they would have decreased liability if they formed a corporation."  Shortly thereafter, Dana and Hall incorporated Freemason.  On May 12, 1998, Hall filed a revised application for registration of the condominium substituting Freemason as the declarant in place of Freemason Associates, L.L.C.  In April 2000, an attorney representing Dana and Hall, wrote to the same roofing contractor requesting that the roof be repaired because it "continues to leak since its installation" and "the roof contains major structural defects which have caused extensive damage."

In the November 22, 2002 opinion letter, the trial court summarized its findings of the pertinent facts established by the evidence introduced during the post-verdict hearing.  Giving due deference to the trial court's findings of fact, it was established that Freemason had maintained all the proper indicia and records for a corporation:  articles of incorporation, by-laws, minutes of shareholder meetings, annual reports, and tax returns.  However, the business of the corporation was actually conducted by Dana and Hall "entirely outside the corporation."  When Freemason acquired the 313 Freemason property from Dana, allegedly in exchange for assuming his personal debt on the property, the corporation never actually assumed the debt.

6

Although the property was encumbered by the lien of a deed of trust to secure the payment of Dana's indebtedness, the deed conveying the property from Dana to Freemason did not recite the existence of that indebtedness nor was Freemason ever contractually liable for the payment of it.

Dana maintained a personal checking account designated by him as the "Rehab" account, which served as the deposit and payment account for the 313 Freemason property as well as several other properties Dana and Hall were renovating.[3] None of these other renovation projects were owned by corporations, but were directly controlled by Dana. Dana maintained separate check registers for each project for which funds were deposited and disbursed from his personal account, but made no other effort to segregate the funds within the account. Freemason had no bank account of its own, and all funds received from the sale of its individual condominium units were deposited into Dana's "Rehab" account. As a result, Freemason never had any liquid

---

[3] During oral argument of this appeal, counsel for Dana and Hall attempted to characterize this account as being a personal account in name only, contending that because it was used only for Dana's business interests, it was somehow distinct from a personal checking account. There is not the slightest suggestion that Dana used the funds deposited into this account for improper purposes. However, the fact remains that this account was established solely in Dana's name in his capacity as a private person, and the corporation had no access to or control over the deposits to that account.

assets, and a warranty reserve fund, which was to have been established following incorporation under the terms of the condominium declaration, was never funded.

Based upon these facts and relying primarily upon O'Hazza v. Executive Credit Corp., 246 Va. 111, 431 S.E.2d 318 (1993), the trial court concluded that Freemason was "formed to evade any personal liability that Dana and Hall would have for the problems with the roof." The court further concluded that there was an identity of interest and ownership between Freemason and Dana and Hall and that "the unity of interest and ownership is such that the separate personalities of the corporation and the individuals no longer exists, and to adhere to that separateness would work an injustice." Accordingly, the trial court ruled that the corporate veil of Freemason would be pierced, and that Dana and Hall could be held personally liable for the amount of the jury verdict and the award of attorney's fees and costs against the corporation.

In a final order dated November 27, 2002, the trial court confirmed the jury verdict in favor of the Association and granted judgment against Freemason in the principal amount of $37,054.75, and under Code § 55-79.53 awarded attorney's fees and costs to the Association in the amount of $61,213.17 against Freemason. Additionally, the trial court pierced the corporate veil of Freemason and granted judgment in favor of the

Association against Dana and Hall, jointly and severally, in the principal amount of $37,054.75 in addition to attorney's fees and costs of $61,213.17. This appeal followed.

DISCUSSION

Initially, we note that the procedural posture of this appeal bars our consideration of a number of assignments of error asserted by Dana and Hall. Dana and Hall filed their notice of appeal jointly. Freemason did not join in that notice and did not file a separate notice of appeal. In their petition for appeal, Dana and Hall assigned error challenging the trial court's failure to strike the evidence as insufficient to support either claim in the Association's motion for judgment, the trial court's failure to grant an instruction regarding the reasonable opportunity to repair, and the trial court's decision to disallow testimony during the trial regarding an award of attorney's fees and costs and instead to decide that issue in a post-trial proceeding without a jury. All the actions complained of in these assignments of error relate to the judgment and the award of attorney's fees and costs against Freemason. As to that corporation, however, both the judgment and the award are final and beyond appellate review.

During oral argument of this appeal, Dana and Hall contended that because the trial court pierced the corporate veil of Freemason and imposed liability upon them, they have

9

standing to appeal the judgment and award against the corporation. We disagree.

"The proposition is elementary that a corporation is a legal entity separate and distinct from the stockholders or members who compose it." Cheatle v. Rudd's Swimming Pool Supply Co., Inc., 234 Va. 207, 212, 360 S.E.2d 828, 831 (1987). The whole corporate concept would be meaningless if such were not the case. Thus, it is also axiomatic that when a corporation causes injury as a result of an unlawful action, it is the corporation that is directly liable for any judgment obtained against it by the injured party. Although under appropriate circumstances, the injured party may seek to pierce the veil of the corporation to impose liability against its stockholders, such action is dependant upon first obtaining a judgment against the corporation. And it follows from this that it is the corporation, and not the stockholders, which has standing to challenge the judgment against the corporation on appeal. Accordingly, only Freemason has standing to challenge the merits of the judgment and award of attorney's fees and costs rendered against it in the present case. For these reasons, we will not consider the assignments of error raised by Dana and Hall with respect to those issues despite the ultimate determination by the trial court to hold them liable for the corporation's judgment debt under a piercing theory. See Prospect Development

10

Co. v. Bershader, 258 Va. 75, 94, 515 S.E.2d 291, 302 (1999) (defendants held jointly and severally liable did not have standing to appeal issues that were relevant only to one defendant who did not join in the appeal). In short, the validity of the judgment and award of attorney's fees and costs against Freemason in favor of the Association is binding on Dana and Hall in this appeal.

We now turn to the question whether the trial court properly pierced the corporate veil of Freemason and assessed liability on Dana and Hall personally. Although the underlying judgment against Freemason arises from a jury verdict, the trial court's judgment to pierce the veil of the corporation was made post-trial by the trial court.[4] Whether to allow piercing the veil of a corporation is a mixed question of law and fact and, accordingly, we review the trial court's application of the law de novo while giving deference to the trial court's factual findings. Caplan v. Bogard, 264 Va. 219, 225, 563 S.E.2d 719, 722 (2002).

Stockholder immunity "is a basic provision of statutory and common law and supports a vital economic policy underlying the whole corporate concept." Cheatle, 234 Va. at 212, 360 S.E.2d

---

[4] The parties agreed that the issue of piercing the corporate veil would be decided by the trial court without a jury.

11

at 831 (1987); accord Beale v. Kappa Alpha Order, 192 Va. 382, 397, 64 S.E.2d 789, 797 (1951). "The decision to ignore the separate existence of a corporate entity and impose personal liability upon shareholders for debts of the corporation is an extraordinary act to be taken only when necessary to promote justice." C.F. Trust, Inc. v. First Flight Limited Partnership, 266 Va. 3, 10, 580 S.E.2d 806, 809 (2003); see also O'Hazza, 246 Va. at 115, 431 S.E.2d at 320; Cheatle, 234 Va. at 212, 360 S.E.2d at 831.

We have recognized that "no single rule or criterion . . . can be applied to determine whether piercing the corporate veil is justified." O'Hazza, 246 Va. at 115, 431 S.E.2d at 320. Each case must be considered in the context of its own specific circumstances. In the present case, the trial court properly recognized that disregarding the corporate entity is usually warranted only under the extraordinary circumstances where

> the shareholder[s] sought to be held personally liable [have] controlled or used the corporation to evade a personal obligation, to perpetrate fraud or a crime, to commit an injustice, or to gain an unfair advantage. Piercing the corporate veil is justified when the unity of interest and ownership is such that the separate personalities of the corporation and the individual[s] no longer exist and to adhere to that separateness would work an injustice.

Id. at 115, 431 S.E.2d at 320-21 (citations omitted).

The trial court determined as a matter of fact that the formation of Freemason as a corporate entity in 1998 was "to

12

evade any personal liability that Dana and Hall would have for the problems with the roof." The evidence in the record supports that finding. Both parties were aware that the roof continually leaked from the time it was installed and that the roof contained "major structural defects" which had caused damage to the condominium. Dana and Hall did not obtain their requested replacement or repair of the roof. Rather, the evidence supports the conclusion that they simply determined to form Freemason and, ultimately, to use that corporation to evade personal liability while the condominium continued to be marketed with a known defective roof.

Similarly, the evidence amply supports the trial court's findings of fact that the unity of interest and ownership was such that the separate personalities of Freemason, Dana, and Hall did not exist. The absolute control of Freemason by Dana and Hall is beyond question. But for the corporate existence of Freemason, Dana and Hall treated and conducted the 313 Freemason renovation just as they did all of their other renovation projects. There is no evidence in the record that Freemason ever conducted the business of a corporation independently from that of its shareholders. The trial court correctly determined that under those circumstances "[Freemason] was the . . . stooge, or dummy" of Dana and Hall. See Lewis Trucking Corp. v. Commonwealth, 207 Va. 23, 31, 147 S.E.2d 747, 753 (1966).

13

It then only remains to be resolved whether the trial court properly concluded that as a matter of law piercing the veil of the corporation was necessary to avoid an injustice. One of the principal factors we look to in resolving the issue of piercing the veil of a corporation, and pertinent here, is whether the inability of the corporation to satisfy the judgment against it is the result of the deliberate undercapitalization by the incorporating stockholders. "If, from its inception, a corporation is unable to pay its costs of doing business because of grossly inadequate capitalization, its legitimacy is suspect. Under such circumstances, stockholders may not be entitled to the corporate shield." O'Hazza, 246 Va. at 116, 431 S.E.2d at 321.

In O'Hazza, we held that an initial capitalization of $10,000 was not, as a matter of law, inadequate to capitalize the close corporation involved in that case. Here, however, the record shows that Freemason was never capitalized even in a de minimis amount. The apparent inability of Freemason to satisfy the judgment against it in this case was not the result of poor business decisions, mismanagement, or unexpected liabilities such that an expected profit never materialized. Rather, because of the deliberate acts of the incorporating stockholders, Freemason suffered from nonexistent capitalization from its inception. Despite an obligation to do so, Dana and

14

Hall never took any steps to establish the corporation's warranty reserve. Moreover, the corporation never had any liquid assets because it had no bank accounts and Dana deposited all funds that were properly the corporation's into his personal checking account. As a result, the corporation had no funds from which it could replace or repair the defective roof. Indeed, upon the conveyances to the various purchasers of individual units of the corporation's only capital asset, the corporation ceased to have any function other than to serve as a shield for Dana and Hall against the civil suits which followed.

This Court has been very reluctant to permit corporate veil piercing. We have made it clear that only an extraordinary exception justifies disregarding the corporate entity in order to hold individual stockholders personally liable for a judgment against the corporation. See, e.g., Greenberg v. Commonwealth, 255 Va. 594, 604, 499 S.E.2d 266, 272 (1998). The conduct of Dana and Hall in clearly calculating to use the corporate entity of Freemason for an unjust purpose is just such an extraordinary exception. On this record, no other conclusion can be reached except that Dana and Hall formed a corporation not to operate a corporate business, but rather merely to avail themselves of a shield against their potential liability for the known defects in the roof. Accordingly, we hold, as a matter of law, that the trial court did not err in piercing the corporate veil of

Freemason and concluding that to permit Dana and Hall to assert the protection of the corporate shield of Freemason would work an injustice in this case.

CONCLUSION

For these reasons, the judgment of the circuit court will be affirmed.

Affirmed.