# CIRCUIT COURT OF THE CITY OF NORFOLK

Shaqwena Anjoli Daughtry

    v.

Gray's Body Shop, Inc.,
Guy Gray,
and Donaldson Gray

March 17, 2011

Case No. (Civil) CL 09-2973

By Judge Karen J. Burrell

This action came before the Court for trial. Plaintiff car owner, Shaqwena Daughtry, seeks judgment against Defendants Gray's Body Shop, Inc. ("Body Shop"), Guy Gray ("Guy"), and Donaldson Gray ("Donaldson"), after Body Shop sold Plaintiff's 2007 Honda Accord at an auction on March 30, 2009. Plaintiff alleges common law fraud against Body Shop and Donaldson and alleges civil conversion, negligence, and violation of the Virginia Consumer Protection Act ("VCPA") against all defendants. Plaintiff seeks $60,000 in compensatory damages and $200,000 in punitive damages.

*Background*

Plaintiff's Honda sedan was in a collision on February 27, 2009, and was shortly thereafter towed and stored by Body Shop. (Tr. 26-27.) Guy,

then president of Body Shop (Tr. 159-62), personally sent certified letters to both Plaintiff and Sovereign Bank, the vehicle's lien holder, on March 4, 2009, indicating that Plaintiff's Honda was to be sold at auction. (Tr. 276-77.) Plaintiff received a notice from the Department of Motor Vehicles ("DMV") in March 2009, and this notice, dated March 4, indicated that Plaintiff's Honda may be sold if she did not satisfy Body Shop's bill. (Tr. 28-29; Pl. Ex. 3.) Shortly thereafter, on or around March 19, Plaintiff received a certified letter from Body Shop, also dated March 4, that indicated that her Honda was to be sold imminently. (Tr. 29-30; Pl. Ex. 2, p. 11.) Guy personally posted public auction notices on March 19, noticing the auction for March 30 at 9:00 a.m. (Tr. 278; Pl. Ex. 2, p. 13.)

Plaintiff testified that Guy, on two separate occasions, indicated that Body Shop would not sell the Honda on March 30. (Tr. 29-32.) Guy's first alleged representation came sometime after March 4, following plaintiff's receipt of the DMV notice. (Tr. 29-32.) On this occasion, Guy allegedly told Plaintiff: "[We are] not going to sell [your] vehicle. It [is a] procedure that [we have] to follow. . . . It is just a protocol that [we] have to follow." (Tr. 29: 4-12.) The second alleged representation came on March 24, following Plaintiff's receipt of the certified letter from Body Shop. (Tr. 28-30.) On March 24, Guy allegedly told Plaintiff: "[We are] not going to sell the vehicle because . . . [you] updated [me about the insurance and payment status]." (Tr. 31: 9-14.)

Guy testified that he made no such representations, but that, during the first of the two communications, via telephone, he explained to Plaintiff that a DMV-sanctioned sale was part of a routine process. (Tr. 285-86.) The second of the two communications occurred on March 24, 2009, when Plaintiff arrived at Body Shop and Guy handwrote a bill of what Plaintiff owed up to that date. (Tr. 287; Pl. Ex. 4.) Plaintiff's Honda was sold at auction by Body Shop on March 30, 2009, and purchased by Donaldson for $1,255. (Tr. 127; Pl. Ex. 2, p. 12.)

*Analysis*

A. *Common Law Fraud as to Donaldson Gray and Body Shop*

Plaintiff alleges that Donaldson and Body Shop through its agent Guy committed fraud upon Plaintiff when they indicated to her that Body Shop would not sell her Honda pursuant to the notices she received from DMV and Body Shop. "A party alleging fraud must prove by clear and convincing evidence (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to him." *Van Deusen v. Snead*, 247 Va. 324, 327, 441 S.E.2d 207, 209 (1994) (quoting *Thompson v. Bacon*, 245 Va. 107, 111, 425 S.E.2d 512, 514 (1993)).

With respect to Donaldson, the Court finds no evidence in the record suggesting that Donaldson made any material representations to Plaintiff that could support a claim of common law fraud. In fact, Plaintiff acknowledged at trial, that she was mistaken in her prior identification of Donaldson and that all material representations made to her concerning the sale of her Honda were made by Guy. (Tr. 72-73.)

With respect to Body Shop, the Court is unable, after a careful review of the evidence in the record, to find by clear and convincing evidence that Body Shop, with Guy acting as its agent, intentionally represented to Plaintiff that her Honda would *not* be sold pursuant to the letters she received from DMV and Body Shop. The only direct evidence regarding Guy's representations comes from the conflicting testimonies of Plaintiff and Guy; thus, the Court must consider the relative plausibility of the accounts. The finder of fact is "the sole judge[] of the weight and credibility of the evidence" and may discard or accept any part of a witness's testimony when considered in relation to all of the evidence before the court. *Smith v. Wright*, 207 Va. 482, 486, 151 S.E.2d 359, 363 (1966). Looking to surrounding evidence for corroboration, the Court finds that the record lacks any evidence, other than Plaintiff's testimony showing that Guy, or any agent of Body Shop, made intentional representations to Plaintiff that her Honda would not be sold pursuant to the notices she had received, despite lack of payment. To the contrary, the uncontradicted evidence established that, on March 24, 2009, the second occasion on which Plaintiff and Guy discussed the auction notices, Plaintiff was advised of the amount due and owing for the storage fees. Under these facts, the Court finds that the amount owed was discussed, because Plaintiff was being advised of what she had to pay to avoid auctioning of her vehicle. While she advised Guy that she would pay the bill within a week, if the insurance company failed to do so, the Court does not believe that Plaintiff was told not to worry about paying the bill as the vehicle would not be sold. Accordingly, Plaintiff's promise of payment did not bind the Body Shop and did not of itself preclude Body Shop from proceeding to pursue auction remedies.

Further, while the Court, certainly views with disfavor the actions of Body Shop and its agents in their dealings with DMV prior to and after the sale of Plaintiff's vehicle, including misrepresenting the actual sale price and failing to comply with the statutory requirements of Virginia Code § 43-34, the Court is unable to conclude that those actions constitute false representations of material fact upon which Plaintiff relied to her detriment, as is required to sustain an action in fraud

As such, with respect to Plaintiff's common law fraud claim, the Court finds for Defendants Donaldson Gray and Body Shop.

B. *Civil Conversion as to All Defendants*

Plaintiff claims that Defendants Body Shop, Guy, and Donaldson interfered with and deprived her of possession of the Honda so as to commit conversion.

> Conversion is the wrongful assumption or exercise of the right of ownership over goods or chattels belonging to another in denial of or inconsistent with the owner's rights. An action for conversion can be maintained only by the person [1] having a property interest in and [2] entitled to the *immediate possession* of the item alleged to have been wrongfully converted.

*Economopoulos v. Kolaitis*, 259 Va. 806, 814, 528 S.E.2d 714, 719 (2000) (internal citations omitted) (emphasis added). With respect to the first element, the fact that Plaintiff had a property interest in the vehicle is undisputed. The second element, however, whether Plaintiff was entitled to *immediate possession* of the vehicle under these particular facts, is in dispute.

Plaintiff's vehicle arrived at Body Shop after having been towed from the scene of an accident. This towing was pursuant to Virginia Code § 46.2-1209, which provides:

> Any law-enforcement officer may remove [an immobilized vehicle left on a highway] or have it removed to a storage area for safekeeping and shall report the removal to the Department [of Motor Vehicles] and to the owner of the motor vehicle . . . as promptly as possible. Before obtaining possession of the motor vehicle . . . its owner or successor in interest to ownership *shall pay to the parties entitled thereto all costs incidental to its removal or storage.*

Va. Code § 46.2-1209 (emphasis added). It is undisputed that Plaintiff had not paid Body Shop for the costs incidental to the removal and storage of the Honda. Given the Court's finding that Body Shop neither excused Plaintiff from paying for the services rendered nor represented that they would wait for Plaintiff to pay, the Plaintiff had an obligation to pay all associated costs. Absent such payment, Plaintiff was not entitled to immediate possession of the Honda, and, as such, Plaintiff cannot maintain an action for the vehicle's conversion. *See Economopoulos*, 259 Va. at 814, 528 S.E.2d at 719. Thus, with respect to Plaintiff's claim of civil conversion, the Court finds for defendants Body Shop, Guy, and Donaldson.

C. *Negligence and Violation of VCPA as to Donaldson and Guy*

Donaldson and Guy are named as defendants in their individual capacity for negligence and violation of VCPA. Because "a corporation is a legal entity entirely separate and distinct from the shareholders or members who compose it," *Cheatle v. Rudd's Swimming Pool Supply Co.*, 234 Va. 207, 212, 360 S.E.2d 828, 831 (1987), and evidence in the record indicates that Donaldson and Guy were at all times acting within the scope of their duties as employees and shareholders of the corporation, they cannot be held liable individually. Shareholder immunity is a "basic provision" that underlies the essential concept of a corporation. *Id.*

Plaintiff suggests that "piercing the corporate veil" may be an appropriate means for this Court to hold Donaldson and Guy liable. (Tr. 307.) To pierce the corporate veil is to refuse to recognize stockholder immunity and "constitutes an extraordinary exception to be permitted only when it becomes necessary to promote justice." *Cheatle*, 234 Va. at 212, 360 S.E.2d at 831 (internal quotation marks omitted). Piercing the corporate veil is:

> warranted only under the extraordinary circumstances where the shareholders sought to be held personally liable [have] controlled or used the corporation to evade a personal obligation, to perpetrate fraud or a crime, to commit an injustice, or to gain an unfair advantage. Piercing the corporate veil is justified when the unity of interest and ownership is such that the separate personalities of the corporation and the individuals no longer exist and to adhere to that separateness would work an injustice.

*Dana v. 313 Freemason*, 266 Va. 491, 500, 587 S.E.2d 548, 553-54 (2003). The court, in determining whether to pierce the veil of a corporation and hold individual shareholders liable, should consider:

> whether the inability of the corporation to satisfy the judgment against it is the result of the deliberate undercapitalization by the incorporating stockholders. If, from its inception, a corporation is unable to pay its costs of doing business because of grossly inadequate capitalization, its legitimacy is suspect. Under such circumstances, stockholders may not be entitled to the corporate shield.

*Id.* at 501, 587 S.E.2d at 554 (internal quotation marks omitted).

Applying this standard to the present case, the Court finds that the principle of piercing the corporate veil does not apply to the present facts.

The record is devoid of evidence suggesting that Body Shop was a sham corporation, was used by the shareholders to evade a personal obligation, to perpetrate fraud, or to commit an injustice of any sort, or was deliberately undercapitalized by its shareholders. Thus, with respect to Plaintiff's claims of negligence and violation of VCPA against Donaldson and Guy, as individuals, the Court finds for the defendants, Donaldson and Guy.

## D. *Negligence as to Body Shop*

Plaintiff asserts that, in addition to Donaldson and Guy, Body Shop was also negligent both in failing to comply with applicable law during its dealings with Plaintiff and her Honda and in failing to make accurate representations to Plaintiff. Negligence is the "failure to use that degree of care which an ordinarily prudent person would exercise under the same or similar circumstances to avoid injury to another." *Griffin v. Shively*, 227 Va. 317, 321, 315 S.E.2d 210, 212-13 (1984) (quoting *Perlin v. Chappell*, 198 Va. 861, 864, 96 S.E.2d 805, 808 (1957)). For liability to attach to negligence, the injurious occurrence must have been a reasonably foreseeable consequence of the defendant's negligence. *Montgomery Ward & Co. v. Young*, 195 Va. 671, 674, 79 S.E.2d 858, 860 (1954) (citation omitted).

Body Shop's rightful possession of Plaintiff's Honda put the two parties in a bailee-bailor relationship. A bailment arises when the bailor delivers chattel and the bailee accepts it. *K-B Corp. v. Gallagher*, 218 Va. 381, 384, 237 S.E.2d 183, 185 (1977) (citing *Crandall v. Woodard*, 206 Va. 321, 327, 143 S.E.2d 923, 927 (1965)). Such delivery and acceptance requires no formality or meeting of the minds and comes into existence when the bailee takes intentional, lawful physical control over the object and assumes the duty to account for the object as the property of another. *Id.* The standard of care owed by a bailee to a bailor depends on whether the bailee is acting gratuitously or for pay. When a bailee acts for pay, he owes a duty of reasonable or ordinary care. *Morris v. Hamilton*, 225 Va. 372, 375, 302 S.E.2d 51, 53 (1983). Here, it is undisputed that Body Shop took intentional, lawful physical control of Plaintiff's Honda pursuant to Virginia Code § 46.2-1209 and that Body Shop anticipated receipt of payment for towing and storing the vehicle. Under the resulting bailment, because Body Shop was acting for pay, rather than gratuitously, Body Shop owed Plaintiff a duty of reasonable care in its handling of Plaintiff's vehicle.

### 1. *Body Shop's Failure To Follow DMV Procedures*

Plaintiff alleges that Body Shop was negligent in failing to follow proper statutory procedure in its auctioning of Plaintiff's Honda. The procedure required depends on the value of the Honda at the time of the

auction; here, this value is disputed. Section 43-34 of the Virginia Code provides that the holder of a mechanic's lien on property valued at $7,500 or less may sell the property by public auction for cash once the debt for which the lien exists is ten days overdue and after filing certain DMV forms. If the property is valued between $7,500 and $15,000, the lienholder must petition the general district or circuit court of the county or city where the property sits and prove the validity of the debt and lien at a hearing. Va. Code § 43-34. If the court is obliged, it may order sale of the property by the sheriff.

Virginia Code § 8.01-419.1 provides that NADA guidebooks or comparable valuation services "regularly used and recognized in the automobile industry" are "admissible as evidence of fair market value" of a motor vehicle. Va. Code § 8.01-419.1. A party may also present other credible evidence if it believes that the value of the vehicle in question is not properly reflected by the NADA estimate. *Id.* Plaintiff's witness Sheila Stevens, Deputy Director for the Department of Motor Vehicles for Vehicle Services and whom the Court determined to be an expert with respect to titling, sale, and auction of vehicles by the DMV, testified that the DMV utilizes the NADA "loan" number to estimate vehicle value for purposes of lienholder auctions. (Tr. 88-89.) The Honda's NADA loan value was $11,725 at the time of auction (Tr. 276; Pl. Ex. 2, p. 22; Pl. Ex. 8), and Guy confirmed his knowledge of this value when he checked a box on the lien title form indicating that the NADA loan value of the Honda was "$7501 to $15,000 [must petition General District Court]." (Pl. Ex. 2, p. 22.)

Stevens testified that she reviewed the discovery in this case and that, if Body Shop believed the NADA value was inaccurate, then Body Shop should have sought an outside, independent appraisal of the vehicle's present value. (Tr. 91-92.) Body Shop was, or should have been, aware of these rules, not only because of Guy's experience with such procedures, but also because the lien paperwork completed by Guy explicitly explains the mandatory procedures, stating:

> DMV verifies a vehicle's value using the NADA loan value. If there is good reason to believe that the vehicle should be valued at $7,500 or less but the NADA loan value is more than $7,500, you may present other creditable evidence to support lowering the vehicle value. An example would be an independent appraisal. This evidence will be reviewed by DMV to determine an appropriate value.

(Pl. Ex. 2, p. 22.) Stevens testified that Body Shop did *not* submit an independent appraisal. (Tr. 92-93, 95.) Thus, because the DMV's estimated value of the Honda, $11,725, exceeded $7,500 and Body Shop offered

no supplemental "creditable evidence" to support a different value, Body Shop should have, pursuant to statutory authority, obtained a court order before auctioning the Honda. *See* Va. Code § 43-34. Stevens explained that a court order is required before such auctions take place to protect both the Customer and the towing company, as well as to ensure that the towing company or repair shop [is not] . . . selling something illegally or making a decision that is against policy." (Tr. 97.) In sum, if Body Shop believed that the DMV's estimate was incorrect or too high, Body Shop should have submitted additional evidence supporting a lower value.

An ordinarily prudent auto body garage would have exercised a level of care consistent with the procedures described above. Because Body Shop failed to follow such procedures in valuing and auctioning Plaintiff's Honda, Body Shop failed to utilize the degree of care that a reasonable person in a similar circumstance would have used when seeking to auction a bailed automobile. *See Griffin v. Shively*, 227 Va. 317, 321, 315 S.E.2d 210, 212-13 (1984). Had Body Shop followed the proper DMV and statutory procedures, Plaintiff would have had substantial, additional notice of the sale of her Honda by way of a court hearing, which would have resolved any confusion or miscommunication regarding the status of her vehicle and would also have allowed Plaintiff to take steps to avoid losing her Honda. Moreover, it should have been reasonably foreseeable to Body Shop that its actions and, in particular, its failure to follow proper statutory procedures could lead ultimately to Plaintiff's injury, the loss of her vehicle. *See Montgomery Ward & Co. v. Young*, 195 Va. 671, 674, 79 S.E.2d 858, 860 (1954).

As such, Body Shop's failure to follow the standard procedures, described above, was both an actual and proximate cause of Plaintiff's loss of her Honda. The Court, therefore, finds that Body Shop's failure to follow proper procedure amounted to negligence, and the Court finds for Plaintiff on her negligence claim.

### 2. *Body Shop's Failure To Make Accurate Representations*

Plaintiff also argues that Body Shop was negligent in its communications with Plaintiff. Because the Court determined that Body Shop did not misrepresent to Plaintiff that her car would not be sold as indicated in the letters she received, the Court finds for Body Shop with respect to this particular theory of negligence

### 3. *Plaintiff's Contributory Negligence*

Defendants argue that Plaintiff is barred from recovering under a claim of negligence because she was contributorily negligent in failing to pay Body Shop for its services. "Contributory negligence consists of

the independent elements of negligence and proximate causation," and, thus, "[p]roof of a plaintiff's negligence alone is insufficient to establish contributory negligence, even if the plaintiff is negligent per se." *Estate of Moses v. Southwest Va. Transit Mgmt. Co.*, 273 Va. 672, 678, 643 S.E.2d 156, 160 (2007). Accordingly, "[w]hen a defendant relies upon contributory negligence as a defense, he has the burden of proving by the greater weight of the evidence not only that the plaintiff was negligent, but also that his negligence was a proximate cause, a direct, efficient contributing cause of the accident." *Karim v. Grover*, 235 Va. 550, 552, 369 S.E.2d 185, 186 (1988) (citations omitted) (internal quotation marks omitted).

The law of proximate causation, as an element of contributory negligence, is also well established. "The proximate cause of an event is that act or omission which, in natural and continuous sequence, unbroken by an efficient intervening cause, produces the event, and without which that event would not have occurred." *Beverly Enterprises-Virginia v. Nichols*, 247 Va. 264, 269, 441 S.E.2d 1, 4 (1994). An intervening cause is a subsequent negligent act by another party that, alone and without the original negligence contributing, produces the injury. *Kellermann v. McDonough*, 278 Va. 478, 494, 684 S.E.2d 786, 794 (2009).

With respect to the first element of a contributory negligence claim, the Court finds that Plaintiff's failure to pay her bill does not amount to negligence. Although Plaintiff owed Body Shop for towing and storage fees, Defendants have alleged no injury as a result of her failure to pay. Even so, it does not follow that any injury that Defendants *might* have suffered was a reasonably foreseeable consequence of her action or, in this case, inaction. *See Montgomery Ward & Co. v. Young*, 195 Va. 671, 674, 79 S.E.2d 858, 860 (1954). Moreover, Plaintiff's failure to pay her bill before the vehicle was auctioned does not amount to a failure to use the standard of care that a reasonable person would use in a similar situation because it is not incredible that Plaintiff waited several weeks to pay her bill or that she withheld payment until she heard from the insurance company regarding her claim. *See Griffin v. Shively*, 227 Va. 317, 321, 315 S.E.2d 210, 212-13 (1984).

Under these facts, the Court does not find that Plaintiff's failure to pay Body Shop's bill amounted to negligence. However, even were the Court to assume that Plaintiff's failure to pay Body Shop could be construed as negligence, her actions are not the proximate cause of the loss of her vehicle. Rather, the proximate cause of Plaintiff's loss is Body Shop's failure to follow proper DMV and statutory procedures. Section 43-34 of the Virginia Code creates a duty on the part of Defendant, as the bailee, owed to Plaintiff, as the bailor, regarding the auction of her vehicle. The statute, itself, presumes that the bill for the bailed property has not been paid. Body Shop was required, pursuant to § 43-34, to obtain a court order before auctioning the Honda because the DMV's estimated value of

the Honda exceeded $7,500. Had Body Shop believed, as it now claims it does, that the vehicle was worth less than the DMV's estimated value, Body Shop should have offered an independent appraisal or other credible evidence supporting a lower value. Body Shop, however, failed to do so. Under these facts, were the Court to assume that Plaintiff was negligent, her failure to pay was "[]broken by an efficient intervening cause," *see Beverly Enterprises-Virginia*, 247 Va. at 269, 441 S.E.2d at 4, because Body Shop's failure to follow proper statutory procedure and, in particular, its negligent sale of the vehicle caused plaintiff's loss. Body Shop's negligent sale of the vehicle was an intervening cause that alone, and without any negligence on plaintiff's part, caused Plaintiff's injury. *See Kellermann*, 278 Va. at 494, 684 S.E.2d at 794.

### E. *Violation of VCPA as to Body Shop*

Plaintiff seeks relief under VCPA based on Body Shop's alleged fraudulent representation that Body Shop would not sell Plaintiffs Honda. Because the Court has determined that Body Shop, with Guy acting as its agent, made no fraudulent representations to Plaintiff concerning Body Shop's sale of Plaintiff's Honda, the Court cannot find a related VCPA violation.

Plaintiff also asks the Court to find that Body Shop is entitled to VCPA relief as a result of Body Shop's improper valuation and sale. Although the Court has determined that the defendants were negligent in their failure to follow statutory procedure, the lien valuation and auction procedures do not constitute a "consumer transaction" with respect to Plaintiff, as defined in Virginia Code § 59.1-198. Plaintiff was not advertised or offered, and did not solicit, any goods or services related to these procedures and was not involved in these procedures. Therefore, the VCPA is inapplicable, and, finding no related VCPA violation, the Court finds for Defendants.

### F. *Damages Owed to Plaintiff*

#### 1. *Compensatory Damages*

Plaintiff seeks compensatory damages in the amount of $60,000. Plaintiff is entitled to damages as a result of Defendant Body Shop's negligence in failing to comply with proper statutory procedure in its auctioning of Plaintiff's Honda. Because Body Shop's negligence resulted in the loss of Plaintiff's vehicle, Plaintiff is entitled to damages in the amount of the vehicle's value at the time it was negligently sold. It is the Plaintiff's burden to prove her damages. *See Deloach v. Zavacky*, 2008 Va. Cir. LEXIS 115, *5 (Charlottesville Cir. Ct. Sept. 26, 2008)

The vehicle's after-collision value is disputed, and conflicting evidence was presented at trial regarding the value of Plaintiff's vehicle when it arrived at Body Shop. Plaintiff's evidence places the car's value between $9,000 and $10,000 based on the difference between the NADA retail value of the car in good condition, $15,425, and Body Shop's initial damage estimate, $6,657.12. (Tr. 26, 80.) Guy admitted that the NADA value minus the damage estimate provides a general idea of vehicle value post-collision but stated that, because of the nature of the damage to the vehicle, it was not actually worth that much. (Tr. 173.) Donaldson and Guy, both of whom were qualified at trial as experts in vehicle valuation, estimated that the value of Plaintiff's Honda, at the time Body Shop took possession of it, was approximately $500. (Tr. 238, 250, 283.) Donaldson testified that, following the repairs he performed on the Honda, its value rose from $500 to between $1,500 and $2,000. (Tr. 237.)

The Court questions the credibility of Donaldson and Guy concerning their estimation of post-collision value and finds that the values they set forth must be accorded diminished, if any, weight. Again, the Defendants estimate the post-accident value at approximately $500. While the Court acknowledges that they were both recognized and accepted as experts in the valuation of vehicles and vehicle repairs, the Court is also mindful of the fact that they are both defendants in this matter and have an inherent motive to provide a low vehicle value. In addition, the Court finds it troubling and suspect that the Defendants refused to allow anyone else, including the insurance company handling the claim, to have access to the vehicle in order to inspect for damage and provide an alternative valuation. Although the insurance company was ultimately provided with photographs of the vehicle and the damage estimate completed by Defendants and concluded that the damage estimate appeared accurate, that certainly does not equate to a "hands on" inspection. A review of the photographs also calls into question the Defendants' estimate of value. Finally, though Guy and Donaldson testified at trial to the $500 value, neither defendant provided this low value at his deposition. When asked at the deposition what the vehicle was worth, Donaldson testified that the vehicle "was worth much less than [$]11,000." (Tr. 138.) When Guy was asked in his deposition what the value of the vehicle was he answered: "You take the [blue book] value minus the damages . . . even though the vehicle is technically not worth that much money. It gives you a rough idea of what the vehicle is worth." (Tr. 172-73.) Accordingly, the Court finds suspect the Defendants' extremely low specific value placed upon the Plaintiff's vehicle at trial.

On the other hand, the Court finds Plaintiff's position to be more sound and the evidence upon which it is based to be more objective. The Court determines that NADA provides competent, credible evidence of the vehicle's pre-accident retail value, as Plaintiff indicated the vehicle was in good condition at the time of the accident (Tr. 36) and that assertion has

not been contested. Further, Body Shop's post-accident damage estimate, prepared prior to Defendant's having a motive to fabricate, provides a reasonable estimate of the amount of damage sustained by Plaintiff's vehicle. Accordingly, the NADA retail value of the vehicle, $15,425, minus the initial damage estimate provided by Defendants, $6,657.12, is $8,767,88, and the Court finds that this value provides a credible estimate of the vehicle's worth after the accident. The Court, therefore, finds that Plaintiff is entitled to $8,767.88 in damages.

### 2. *Mitigation of Damages*

Defendants argue that Plaintiff's refusal to accept State Farm's check amounts to a failure to mitigate damages. (Tr. 315-16.) Mitigation of damages "recognizes that a plaintiff's conduct following the defendant's negligence may be a reason for reducing damages. *Monahan v. Obici Med. Mgmt. Servs.*, 271 Va. 621, 633, 628 S.E.2d 330, 337 (2006). Plaintiff's refusal to accept State Farm's check, however, does not bear on her claims for damages against Defendants. The State Farm check relates to damages sustained in the automobile accident, while Plaintiff's claims for damages against Defendants relate to Defendants' negligent sale of the vehicle. Had Plaintiff refused to accept a check from Defendants covering the amount of damages owed by them for their negligent actions, then, perhaps, Plaintiff's failure to mitigate would be relevant. In the present case, however, even if Plaintiff had accepted the check from State Farm to cover the vehicle's damage from the accident, Defendants would still be liable, in the same amount, for damages related to the negligent sale of the vehicle. In sum, Plaintiff's refusal to accept the State Farm check does not amount to a failure to mitigate damages, and, as such, the Court finds no reason to reduce Plaintiff's damages.

### 3. *Punitive Damages*

Plaintiff also seeks an award of punitive damages in the amount of $200,000. The Supreme Court of Virginia is clear in its discussion of the proof necessary to support an award of punitive damages.

> Punitive or exemplary damages are allowable only where there is misconduct or actual malice, or such recklessness or negligence as to evince a conscious disregard of the rights of others. They are allowed not so much as compensation for plaintiff's loss, as to warn others and to punish the wrongdoer, if he acted wantonly, oppressively, or with such malice as to evince a spirit of [mischief] or criminal indifference to civil

obligations. Willful or wanton conduct imports knowledge and consciousness that injury will result from the act done.

*Jordan v. Sauve*, 219 Va. 448, 452, 247 S.E.2d 739, 741 (1978) (citation omitted). Plaintiff argues that she is entitled to punitive damages because of the outrageous nature of the circumstances. (Tr. 320.) The Court finds, however, that the Defendants' actions, although negligent, do not constitute such recklessness or malicious conduct as to permit an award of punitive damages.

## Conclusion

In sum, for the reasons stated above, the Court finds for Plaintiff with respect to her claim of negligence against Body Shop and awards Plaintiff compensatory damages in the amount of $8,767.88. The Court finds for Defendants on all other claims.