# CIRCUIT COURT OF THE CITY OF CHESAPEAKE

Mid Atlantic Engineering
Technical Services, Inc.

v.

Miller Hardman Designs, L.L.C.,
Timothy Miller,
and Ashlee Miller

March 25, 2013

Case No. (Civil) CL09-2268

By Judge Randall D. Smith

Plaintiff Mid Atlantic Engineering Technical Services, Inc. ("MAETS") filed a suit against Defendants alleging breach of contract and fraudulent conversion and seeking the imposition of a constructive trust on the personal assets of Defendants Timothy and Ashlee Miller ("Millers"). MAETS also sought *quantum meruit*.

This matter was tried before the Court on October 15, 2012, October 16, 2012, and concluded on October 19, 2012. At that time, the Court entered judgment in favor of MAETS and against Defendant Miller Hardman Designs, L.L.C. ("MHD") in the amount of $347,352.00. The parties then filed briefs on the issue of "piercing the corporate veil" of MHD to argue whether the Millers should be held personally liable. The Court has considered the parties' briefs and arguments of counsel. The Court stands ready to rule.

## Background

The case was tried on MAETS's Amended Complaint filed with leave of Court by Order entered January 27, 2010. The Defendants filed demurrers but withdrew them by Order entered November 17, 2010. On December 28, 2010, Defendants filed an Answer. The November 17, 2010, Order allowed Defendants to file an answer within twenty-one days. MAETS did not object to the filing of Defendants' Answer. As such,

the Court will consider the claims alleged and Defendants' Answer filed December 28, 2010.

Mr. Miller was the Director of Operations and managing member of MHD. Ms. Miller was the President and a member of MHD. MAETS and MHD entered into contracts for MAETS to perform work on shipping vessels for MHD. Defendants refused to pay MAETS for a large part of the work MAETS performed.

*Law and Analysis*

A. *Piercing the Veil*

MAETS seeks to pierce the veil of MHD to hold the Millers personally liable. Like a corporation, a limited liability company shields its members from personal liability for actions taken by the limited liability company. *See* Va. Code Ann. § 13.1-1019. Corporations are separate legal entities from shareholders, and shareholders cannot be held liable for the acts of the corporation. Piercing the corporate veil disregards the corporate fiction and allows shareholders to be held personally liable for the acts of the corporation. *See Cheatle v. Rudd's Swimming Pool Supply Co.*, 234 Va. 207, 212, 360 S.E.2d 828, 831 (1987). Piercing the corporate veil is an equitable remedy and should only be applied on rare occasions to promote justice. *Id.*

Although MHD is a limited liability company, not a corporation, it seems logical to apply the same approach to a limited liability company. Failure to do so would create a liability shield for a limited liability company superior to that of a corporation. *See Gowin v. Granite Depot., L.L.C.*, 272 Va. 246, 634 S.E.2d 714 (2006) (finding no difference between entity forms that would justify applying the protection of the corporate veil to actions of closely held corporations but not to actions of limited liability companies).

The Supreme Court of Virginia has not recognized a single fact or set of facts necessary to pierce the corporate veil. *Dana v. 313 Freemason Condo. Ass'n*, 266 Va. 491, 500, 587 S.E.2d 548, 553 (2003) (quoting *O'Hazza v. Executive Credit Corp.*, 246 Va. 111, 115, 431 S.E.2d 318, 320 (1993)). Each case must be decided on its specific facts. *Id.* Courts consider whether shareholders "controlled or used the corporation to evade a personal obligation, to perpetrate fraud or a crime, to commit an injustice, or to gain an unfair advantage." *Id.* at 500, 587 S.E.2d at 554. Piercing the corporate veil is also justified when "the unity of interest and ownership is such that the separate personalities of the individuals no longer exist and to adhere to that separateness would work an injustice." *Id.* Courts analyze the initial capitalization of a corporation, the observation of corporate formalities, the non-payment of dividends, the insolvency of the debtor corporation at the time, the siphoning of funds of the corporation by dominant shareholders,

the non-function of other officers or directors, and whether the corporate structure is a sham. *313 Freemason v. Freemason Assocs.*, 61 Va. Cir. 690, 693-94 (2002).

Again, it appears that the same general principles that apply to corporations should apply to limited liability companies. However, failure to observe corporate formalities and operating the limited liability company as the alter ego of the member should not be weighed as heavily, as limited liability companies are designed to operate without the same formalities as corporations. *See* R. Neal Keessee, Jr., "Liability and Dispute Resolution," in *Limited Liability Companies in Virginia*, Ch. 3, ¶ 3.204 (4th ed. 2012).

At trial, Roderick Smith, owner of MAETS, was the only credible witness of the parties. Mr. Smith and Dwayne Hardman were business partners until 2009 when Mr. Smith purchased Mr. Hardman's shares of MAETS. Mr. Hardman wanted to bring Mr. Miller into the business, but Mr. Smith did not wish that to occur. Mr. Miller and Mr. Hardman formed MHD along with Mr. Miller's daughter, Ms. Miller. (Prior to trial Ms. Miller was married. Her legal name is now Ashlee Harris.) Although Ms. Miller was still in college at the time, had absolutely no experience in the work force, and had no education or training in the work performed by MHD, Ms. Miller was made president, Mr. Hardman was named vice president, and Mr. Miller was made director of operations. Ms. Miller owned 55% of the company and Mr. Hardman and Mr. Miller owned 45% of the company. Mr. Miller testified that Ms. Miller was brought in so that MHD could receive minority owned business "8A" status because of Ms. Miller's Portuguese heritage.

MHD did not have adequate capitalization. MHD was not just underfunded; the company began without any funds. MHD billed subcontractors almost $400,000 before any actual work commenced.

The Millers and Mr. Hardman paid personal expenses out of MHD funds. In fact, the majority of expenses listed in MHD's books were for personal items such as Mr. Miller's home television and Ms. Miller's groceries. Personal withdrawals occurred so frequently that an accounting for each work order is impossible. Personal withdrawals were made without any consideration for payment for MHD's debts and costs.

Additionally, Mr. Miller withdrew funds from MHD and diverted funds to MHD to use them for payment to other companies owned by Mr. Miller or for personal expenses. Even if Mr. Miller's testimony about returning money to MHD while this suit is pending was believable, that does not alter the fact that the funds were taken with a fraudulent intent.

If MHD was not founded with the intent to defraud MAETS, MHD operated to defraud MAETS. The Millers and Mr. Hardman took everything they could out of MHD without regard to the MHD's solvency or expenses owed to MHD's creditors. MAETS has, therefore, established fraud. If MHD was not founded as a sham, MHD began operating as one

in which the Millers used MHD as their personal bank account. MAETS has demonstrated that the veil of MHD should be pierced. Therefore, the fiction of the limited liability company is set aside and the Millers may be held personally liable for acts of MHD.

## B. *Count I: Breach of Contract*

In its Amended Complaint, MAETS alleged MHD breached the contract between MAETS and MHD. On October 19, 2012, the Court rendered judgment for MAETS and against MHD in the amount of $347,352.00. Having pierced the corporate veil, the Millers are personally liable for the acts of MHD. Therefore, the Millers are jointly and severally liable to MAETS for $347,352.00, and judgment is entered against them.

## C. *Count II: Fraudulent Conversion*

In its Amended Complaint, MAETS alleged fraudulent conversion by Mr. Miller and Ms. Miller. MAETS has no standing to claim the Millers converted MHD's funds to themselves. As such, Va. Code Ann. § 55-80 does not apply. Therefore, Count II of the Amended Complaint is dismissed.

## D. *Count III: Constructive Trust*

In its Amended Complaint, MAETS sought to impose a constructive trust on Mr. Miller and Ms. Miller.

Constructive trusts arise, independently of the intention of the parties, by construction of law. They occur not only where property has been acquired by fraud or improper means, but also where property is fairly and properly acquired and it is contrary to equity that the property be retained. *Faulknier v. Shafer*, 264 Va. 210, 215, 563 S.E.2d 755, 758 (2002) (citing *Leonard v. Counts*, 221 Va. 582, 589. 272 S.E.2d 190, 195 (1980)). Courts may impose constructive trusts whenever necessary to prevent a failure of justice. *Id.* (citing *Richardson v. Richardson*, 242 Va. 242, 245, 409 S.E.2d 148, 150 (1991)). "To be entitled to the benefit of a constructive trust, a claimant's money must be 'distinctly traced' into the chose in action, fund, or other property which is to be made the subject of the trust." *Crestar Bank v. Williams*, 250 Va, 198, 204, 462 S.E.2d 333, 335 (1995) (citing *Watts v. Newberry*, 107 Va. 233, 240, 57 S.E. 657, 659 (1907)).

MAETS did not provide clear and convincing evidence distinctly tracing the funds from MHD into an account or asset owned by the Millers. As such, all the requirements for a constructive trust were not met. Therefore, Count III is dismissed.

### E. *Count IV: Quantum Meruit*

In its Amended Complaint, MAETS sought *quantum meruit* from Mr. Miller and Ms. Miller for the benefit of work the Millers received from MAETs.

A cause of action for *quantum meruit* is only appropriate where no express contract exists between the parties. *See R. M. Harrison Mech. Corp. v. Decker Indus., Inc.*, 75 Va. Cir. 404, 412 (2008) (citing *Ellis & Myers Lumber Co. v. Hubbard*, 123 Va. 481, 502, 96 S.E. 754, 760 (1918)).

In this case, the Court determined an express contract existed between the parties and found that MHD breached that contract. As such, MAETS cannot maintain a suit for *quantum meruit*. Therefore, Count IV is dismissed.